**Henry E. HOWARD, Plaintiff,**

v.

**Arthur A. LEONARDO; Captain R. Juckett; Sergeant Fitzpatrick, Defendants.**

**No. 89–CV–110.**

United States District Court, N.D. New York.

March 10, 1994.

Henry E. Howard, plaintiff, pro se.

G. Oliver Koppell, Atty. Gen. of the State of N.Y., Albany, NY, for defendants (David B. Roberts, Asst. Atty. Gen., of counsel).

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Plaintiff brought the instant civil rights action claiming that he was confined to Involuntary Protective Custody ("IPC") in retaliation for the exercise of his constitutional rights, and was denied his right of access to the courts when his typewriter was confiscated for a period of sixteen days. Specifically, he alleges that he was confined to IPC in retaliation for drafting and distributing forms to the inmate population for filing grievances pursuant to N.Y. Correction Law § 114–a ("§ 114–a Forms"), and that as a result of his typewriter being confiscated, he missed a court deadline in his habeas corpus proceeding. Moreover, he alleges that his Fourteenth Amendment rights were violated when property, other than his typewriter, was either stolen or lost during transfer to IPC.

Defendants move to dismiss plaintiff's complaint on the grounds that: (1) plaintiff's due process rights were not violated during the IPC hearing conducted prior to confinement; (2) any allegations of retaliatory conduct by defendants are insufficient to state a claim under § 1983; (3) plaintiff's right of access to the courts was not infringed because there exists no constitutional right to a typewriter; (4) allegations of lost or stolen property do not rise to a Fourteenth Amendment violation; and (5) plaintiff has failed to allege personal involvement on behalf of Superintendent Leonardo. Plaintiff opposes defendants' motion.

## FACTS

While an inmate at Great Meadow Correctional Facility, plaintiff worked as a law clerk in the facility's law library. In the Summer of 1988, plaintiff and several other inmates devised a form to assist inmates in filing grievances and requesting a prompt written response from prison officials, the § 114–a Form. According to plaintiff, Leonardo became upset that these forms were being used by inmates, and directed that the § 114–a Forms be confiscated. Thereafter, the law library and all the law clerks and their property were searched and the forms were seized.[1] The Law Library was again searched on December 13, 1988, after plaintiff filed another § 114–a Form to complain about an incident involving a civilian employee at the mess hall. Plaintiff's typewriter was confiscated to determine if it conformed to prison regulations. During this search for additional § 114–a Forms, Fitzpatrick found a letter written by plaintiff to another inmate, Maximillian Amparo. The letter discussed payments made by plaintiff to Amparo as compensation for legal assistance, and also characterized Amparo's additional requests for money as "extortion." The letter then described an attempt by Amparo to start a fight with plaintiff over the money and anticipated that Amparo might try to harm plaintiff in the future. Plaintiff wrote that if Amparo did attempt anything, his business partner on the outside, as well as his lawyer, was aware of his extortion attempts. As a result of discovering this letter, plaintiff was placed in IPC that very day. Incident to the IPC confinement, plaintiff's property was packed by corrections officers and taken from his cell to IPC, although his typewriter was not returned to him until December 29, 1988.[2]

---

1. In a Departmental Memo addressed to defendant Juckett, defendant Fitzpatrick wrote that the search was conducted to look for "bogus" forms which were being used by inmates.

2. Plaintiff alleges that most of his property was not delivered to him in IPC for at least five days and that approximately $1200 worth of property

As plaintiff admits, (Pltf's Aff. Opp.Summ.J. at 2), the central issue in this case revolves around his allegations that he was denied his right of access to the courts. Plaintiff alleges that at the time his typewriter was confiscated, his reply brief in his habeas corpus action was due in district court in nine days; and since it was contained in the memory of his typewriter and Fitzpatrick would not allow him to print it out before it was confiscated, his habeas petition was dismissed.

The Supreme Court in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), set forth the minimum requirements necessary to guarantee meaningful access to the courts. The Second Circuit has stated that the "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and Section 1983 are intended to remedy." *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988) (quoting *Morello v. James,* 810 F.2d 344, 346–47 (2d Cir.1987)). Therefore, paper, pens, notarial services, and stamps, as well as adequate library facilities, must be provided to inmates. *Bounds,* 430 U.S. at 824–825, 97 S.Ct. at 1496–1497.

■ Where a claim of entitlement to a legal resource is asserted on such grounds, a two-tier inquiry is appropriate. *Griffin v. Coughlin,* 743 F.Supp. 1006, 1022 (N.D.N.Y. 1990). If the adequacy of the prison law library or access to alternative sources of legal knowledge are being challenged, the plaintiff need not allege actual injury. However, where an inmate alleges a denial of access on some other claim, i.e., that the actions of an individual prevented him from accessing the law library or meeting a court deadline, then the court must determine whether the prisoner has suffered an actual injury in a pending lawsuit. *Id.*

■ First, defendants correctly state that inmates have no constitutional right to the possession and use of a typewriter. *Wolfish v. Levi,* 573 F.2d 118, 129 (2d Cir. 1978), *rev'd on other grounds,* 441 U.S. 520,

99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Sand v. Lewis,* 886 F.2d 1166, 1169 (9th Cir.1989). That is, since prisoners are not prejudiced by filing hand written briefs, the constitution does not afford inmates the right to a typewriter. *Twyman v. Crisp,* 584 F.2d 352, 358 (10th Cir.1978). Plaintiff does not claim, however, that he has a constitutional right to the use of a typewriter in the preparation of his legal brief. His claim is more narrow. Plaintiff alleges that with just nine days before his reply brief was due to the court, Fitzpatrick confiscated his typewriter— knowing both that the reply brief was in the typewriter's memory, and that it was due in court in several days. Although plaintiff must show that he suffered injury from the actions of defendant, he need not, as defendants would have it, show that his petition was dismissed specifically because his typewriter was taken away or his brief was lost in the memory of his typewriter. Plaintiff's allegation that his reply brief, which happened to be contained in the typewriter's memory, was confiscated is no different than allegations that prison officials have confiscated a prisoner's other legal work product. Plaintiff must now show that he suffered some injury from defendant's actions.

At the time his typewriter was confiscated, plaintiff was preparing a brief in response to the answer to his habeas corpus petition.[3] The response was due in nine days. Plaintiff allegedly informed Fitzpatrick of this fact and requested that he be allowed to retrieve the reply brief from the typewriter before it was confiscated. Fitzpatrick refused. With the court deadline fastly approaching, and now confined to IPC, plaintiff alleges he was unable to re-research and write the reply brief again, and so he contacted his attorney and requested the attorney prepare a reply. His attorney agreed. However, plaintiff alleges that because the attorney included an unexhausted claim in his reply brief, a claim plaintiff alleges he would not have included, his petition was dismissed on the ground that it contained an unexhausted claim. *Rose v.*

---

was either not returned to him or stolen by other inmates.

3. Plaintiff had been represented by counsel, but counsel was not preparing the response himself because apparently counsel disagreed with plaintiff's legal strategy.

*Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Plaintiff, however, has failed to show that it was the actions of the defendant that caused his petition to be dismissed.

After Fitzpatrick confiscated his typewriter, plaintiff had the opportunity to rectify the situation. He was able to contact his attorney and request that a reply brief be prepared on his behalf. A timely brief was submitted. Therefore, it was the actions of his attorney that allegedly resulted in the petition being dismissed. Plaintiff has not submitted his proposed reply brief, nor has he shown that he was unable to receive an extension in time in which to file an amended reply brief. Moreover, his petition was dismissed without prejudice, giving plaintiff the opportunity to refile his petition without the unexhausted claim. There is no evidence, other than plaintiff's unsubstantiated allegation, that he would not have included the unexhausted claim in his reply brief.

Moreover, in the letter requesting that his attorney prepare the reply brief, plaintiff requests only that he "refut[e] each and everything that the district attorney has mentioned in his answer." (Pltf's Aff. Opp.Summ.J., Ex. H) In fact, plaintiff, in his objections to Magistrate Judge Grubin's Report and Recommendation, wrote that his reply brief was only in response to respondent's supplemental memorandum of law which contained reference to the unexhausted claim, and that "any *surplusage* employed in a reply to Respondent's supplemental memorandum of law, ought not be deemed 'the new claim' by the court." (Def's Mot. Summ.J., Ex. E at 4) It appears, then, that it was not plaintiff's attorney who raised the unexhausted claim, but the respondents who first made reference to it in their supplemental memorandum of law. The attorney did only what plaintiff told him to do, i.e., respond to each and every argument made by the respondents.

■ Plaintiff also claims that property other than his typewriter was either lost or stolen when it was transferred from his regular cell to his IPC cell. Specifically, he alleges that after he was placed in IPC, corrections officers packed up his belongings without using a proper form, and then, before transferring the property to IPC, allowed inmates to take whatever property they wished. Plaintiff alleges that such actions were in retaliation for drafting and distributing the § 114–a Forms, and therefore was in violation of his First and Fourteenth Amendment rights. Defendants argue that plaintiff was provided a meaningful postdeprivation remedy in which to recover the value of any lost or stolen property, and thus his Fourteenth Amendment rights were not violated.

■ With respect to the stolen or lost property, the Supreme Court has held that even intentional destruction of prisoner's property may not be basis for constitutional claims if sufficient postdeprivation remedies are provided. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) (citing *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981)). The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Parratt,* 451 U.S. at 540, 101 S.Ct. at 1915. Therefore, as long as a meaningful postdeprivation remedy is provided, the Fourteenth Amendment is satisfied. This is true even in situations when the deprivation is the result of random and unauthorized acts by prison employees. *Id.* at 541, 101 S.Ct. at 1916. In the instant case, plaintiff has failed to allege or prove that New York does not provide an adequate postdeprivation remedy to recover the value of his lost or stolen property. In fact, defendants allege, and the plaintiff does not dispute, that the records at Great Meadow indicate that plaintiff did file a claim with corrections officials alleging that his property was either stolen or lost; that claim was denied. Therefore, plaintiff was not denied due process when his personal property was either lost or stolen.[4]

---

**4.** Plaintiff also alleges that defendants failed to follow state prison directives when they packed his personal property for transfer to IPC. Plaintiff, however, has failed to allege a constitutional violation. It is well settled that violations of a state regulation, absent substantive limitations on official discretion, *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), do not necessarily violate due process. *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.

■ Plaintiff also claims that his cell was searched in retaliation for drafting and distributing the § 114–a Forms. The Supreme Court has held that prisoners simply do not enjoy any expectation of privacy in their individual cells. *Hudson,* 468 U.S. at 525–26, 104 S.Ct. at 3199–3200; *see also Abdul Wali v. Coughlin,* 754 F.2d 1015, 1031 (2d Cir. 1985) ("[S]uch a conclusion dictates virtually unbounded deference to a corrections official's discretion, for there is no prisoner interest against which to balance it.") The Court specifically stated that Fourth Amendment privacy rights are "fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* 468 U.S. at 527–28, 104 S.Ct. at 3200–01. "Concededly, isolated instances of unreasonable searches by prison officials may occur, but overall considerations of institutional security outweigh a prisoner's claim to privacy in particular cases." *United States v. Cohen,* 796 F.2d 20, 22–23 (2d Cir. 1986). Therefore, since plaintiff enjoys no expectation of privacy in his prison cell, prison officials may search his cell for any reason or no reason at all.[5]

■ Plaintiff next alleges that he was confined in IPC in retaliation for drafting the § 114–a Forms. The defendants contend that plaintiff was placed in IPC for legitimate reasons and thus plaintiff's claim of retaliation must fail. In order for plaintiff to state a claim that defendants retaliated against him for engaging in a constitutionally protected activity, he must establish that the defendants would not have confined him to IPC in the absence of the constitutionally

protected activity. *Hilliard v. Scully,* 648 F.Supp. 1479, 1487 (S.D.N.Y.1986); *Abdul Majid v. Henderson,* 533 F.Supp. 1257, 1270 (N.D.N.Y.1982), *aff'd,* 714 F.2d 115 (2d Cir. 1982). It is clear from the record, however, that defendants had a legitimate reason to confine plaintiff to IPC. The letter written by plaintiff to inmate Amparo, standing alone, is sufficient evidence of the existence of an extortion attempt and threats of violence to confine plaintiff to IPC.[6] Therefore, since defendants have put forth an independent reason justifying their actions, plaintiff, in order to defeat summary judgment, must allege that the defendants would have not so acted in the absence of the exercise of alleged constitutional rights.

Plaintiff only argues in conclusory fashion that the attempted extortion incident had been settled before Fitzpatrick discovered the letter, and that he was confined to IPC not because of the attempted extortion, but in retaliation for devising the § 114–a Forms and filing grievances. Plaintiff has offered no evidence that the decision to confine him to IPC was based on anything other than the threat presented to plaintiff by inmate Amparo and his "cronies." A review of the IPC hearing record demonstrates that the hearing officer had sufficient evidence before him to conclude that it was in the best interest of both the facility and the plaintiff to confine him to IPC. (Mot.Summ.J., Ex. A)[7] Moreover, plaintiff has not shown that he enjoys a constitutional right to draft and distribute the § 114–a Forms, and therefore he cannot support his claim of retaliation based on the exercise of a non-existent constitutional right.

1987); *Afrika v. Selsky,* 750 F.Supp. 595, 602 (S.D.N.Y.1990).

**5.** To the extent that plaintiff's cell was searched in retaliation for exercising an alleged constitutional right, *Franco,* 854 F.2d 584, i.e., drafting the § 114–a Forms, plaintiff has not presented the court with an argument that prisoners enjoy a First Amendment right to create their own grievance forms and distribute them throughout the facility, especially when the facility provides the means to file a grievance.

**6.** In the letter, plaintiff recounted an incident wherein Amparo attempted to start a fight with plaintiff, and characterized Amparo's additional

requests for money as "extortion." Plaintiff also warned Amparo that he had taken steps to ensure that Amparo's extortion attempts would be revealed if plaintiff was actually harmed.

**7.** To the extent that plaintiff's complaint, read liberally, may allege that his due process rights were violated during the IPC hearing, plaintiff received all the process he was due. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Plaintiff received timely notice of the hearing, was presented with the opportunity to have the assistance of an employee (which he declined), was present at the hearing, and was allowed to call witnesses on his behalf (which he also declined).

Accordingly, it is

ORDERED, that defendants' motion for summary judgment is GRANTED, and the complaint is dismissed.