**Ian DAWES, Plaintiff,**

v.

**D.S.P. CARPENTER; Lt. Shovah; Lt. Hamlin; Patterson; Lt. Vladyka; Lt. Dibiase; Harrison, Defendants.**

**No. 92–CV–1262.**

United States District Court, N.D. New York.

June 21, 1995.

Ian Dawes, Pro Se.

Ellen Lacy Messina, Assistant Attorney General Dennis Vacco, Attorney General of the State of New York, for Defendants.

KAPLAN, District Judge.*

Plaintiff Ian Dawes, a former inmate at the Great Meadow Correction Facility ("GMCF"), sues New York State Department of Correctional Services ("DOCS") personnel pursuant to 42 U.S.C. § 1983 (1988), complaining about alleged procedural deficiencies in nine separate disciplinary actions against him at GMCF. He claims also that the elimination of a DOCS postage subsidy for inmates' non-legal mail violated the First Amendment.

Defendants are Lieutenants Shovah, Hamlin, Vladyka and DiBiase, and Hearing Officers Harrison and Patterson, each of whom presided over one or more hearings against plaintiff. The hearings occurred on September 26, 1989 ("Hearing A"), November 22, 1989 ("Hearing B"), November 27, 1989 ("Hearing C"), December 12, 1989 ("Hearing D"), January 18, 1990 ("Hearing E"), March 3, 1990 ("Hearing F"), November 17, 1990 ("Hearing G"), and November 27, 1990

---

* Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

("Hearing I").[1]  In addition, plaintiff sues Deputy Superintendent ("DSP") Carpenter, who allegedly ratified and condoned the allegedly unconstitutional proceedings on appeal, and Commissioner Coughlin, who changed DOCS' postage policy.

Each disciplinary action dealt, *inter alia*, with plaintiff's alleged destruction of DOCS property.  Plaintiff was found guilty and ordered to pay restitution to the State in each case.  Although plaintiff does not deny that he destroyed this property, he nevertheless claims that the proceedings violated the Fourteenth Amendment guarantee of due process of law because he was (1) denied the assistance of a DOCS employee in preparing his defense, (2) denied the opportunity to attend the hearings, (3) denied the opportunity to call witnesses or to attend the testimony of favorable witnesses, and/or (4) illegitimately forced to pay restitution, allegedly in retaliation for his frequent litigation against DOCS and without sufficient evidence of the pecuniary loss to DOCS for which he was directed to pay restitution.

Defendants move for summary judgment on all of plaintiff's claims.  Plaintiff cross-moves for summary judgment on his due process claims regarding the imposition of restitution penalties, his alleged exclusion from the hearings, and on his First Amendment claim.

### Background
### Disciplinary Proceedings

Each proceeding against plaintiff involved three steps.  First, plaintiff was charged with misbehavior and allowed time to prepare a defense.  It is in this stage that plaintiff claims he improperly was denied assistance during several proceedings.  Second, plaintiff was given a hearing on the charges.  Plaintiff claims, *inter alia*, that he improperly was precluded from attending or calling witnesses at several of the hearings.  Third, plaintiff received punishment, including the challenged restitution penalties, and appealed from the disposition, allegedly to DSP Carpenter.

### Disciplinary Proceedings—The Filing of Charges and Selection of an Assistant

Each action against plaintiff was initiated by a DOCS employee who filed a Misbehavior Report (a "Report") that described the claimed wrongful behavior and the rule or rules allegedly violated.[2]  (*See, e.g.,* Ex. A at 6) The Reports at issue here allege, *inter alia*, various acts of destruction of DOCS property, including three instances in which plaintiff damaged the plexiglass on his cell bars (Ex. A at 6; Ex. D at 4; Ex. E at 6), two cases in which plaintiff damaged electric shaving clippers and bed sheets ([clippers] Ex. F at 5; Ex. G at 5; [bedsheets] Ex. B at 6; Ex. H at 4), the destruction of a guard's watch (Ex. I at 7), and the disabling of a set of handcuffs (Ex. C at 9).

After a Report was issued, plaintiff was given notice of the charges and an opportunity to collect evidence and prepare a defense.  However, because plaintiff was in a Special Housing Unit ("SHU") during the course of every proceeding, he was unable to move about the prison and collect evidence.  As required by regulation in such circumstances, plaintiff was allowed to select an assistant whom he could direct to gather evidence and question witnesses.  7 N.Y.C.R.R. § 251–4 (1994).  The group eligible for selection were DOCS employees designated for that purpose and listed on an Assistant Selection Form (a "Selection Form"), which plaintiff was given and asked to sign before every hearing.  (*See, e.g.,* Ex. A at 11)

The Selection Forms from the proceedings at issue indicate that in most cases plaintiff refused either to select an assistant or to sign the Selection Form.  (*See, e.g.,* Ex. C at

---

1.  Each hearing's letter corresponds to its exhibit letter in the Defendant's Response to Request for Production of Documents (Dkt. # 18).  Defendants submitted this compilation without page numbers.  In referring to exhibit page numbers, number one is the top page of the exhibit, and the succeeding pages are numbered consecutively thereafter.  The Court notes also that the complaint dates a number of the hearings differently than do the documents in the exhibits.  This opinion uses the dates in the exhibits.

2.  A Report is both an accusatory instrument that initiates a proceeding and a written statement frequently used as proof at the hearing on the charges it contains.  7 N.Y.C.R.R. § 251.3–1 (1994).

11) When plaintiff did select an assistant, the notes on the Forms show that the assistant questioned witnesses and otherwise conducted the inquiry as directed.[3] (*See, e.g.,* Ex. G at 10) On one occasion, however, it appears that plaintiff may have been denied an assistant despite requesting one. A Selection Form dated September 14, 1989, indicates that plaintiff requested an assistant in preparation for Hearing A, although he did not sign this form. (Ex. A at 11) A second unsigned Selection Form dated September 20, 1989 also indicated that plaintiff refused to select an assistant. (Ex. A. at 12) No explanation is given as to why this second Selection Form was prepared. At the Hearing, Lt. Shovah, the hearing officer, asked plaintiff if he had refused assistance. Plaintiff said that he had not. Shovah told plaintiff that the Selection Form indicated otherwise. Evidently, Shovah had only the September 20 Selection Form in his possession at the hearing, which he showed to plaintiff. Plaintiff then said that, although he did not sign the Selection Form presented to him, he had never received the particular form possessed by Shovah. It appears that Shovah, after questioning plaintiff further, concluded that the September 20 Selection Form was correct and therefore that assistance had been waived, as he continued the hearing despite plaintiff's protest. (Ex. A at 16–18) Defendants say that the September 14 form surfaced from DOCS records only later.

*Disciplinary Proceedings—The Hearings*

After plaintiff was given a chance to prepare a defense with his assistant, hearings were held on the charges in each Report. Plaintiff claims that a number of the hearings as conducted violated the Fourteenth Amendment because: (1) he was excluded from Hearings B and F (Cpt ¶¶ 5, 13), (2) he was denied witnesses at Hearings A, C and F (Cpt ¶¶ 2, 5), and (3) he was excluded from the testimony of favorable witnesses at Hearing I (Cpt ¶ 13). The particulars of each

hearing as they bear on these claims are as follows:

1. Plaintiff was excluded from Hearing B because he had assaulted employees by throwing feces at them the morning of and in the two days before the hearing.[4] (Ex. B at 1) Plaintiff refused to attend Hearing F without giving a reason. (Ex. F at 11)

2. Pursuant to DOCS regulations, an inmate may request witnesses and direct documentary evidence to the hearing officer either before the hearing, via the inmate's assistant or by direct communication with the hearing officer, or at the hearing. 7 N.Y.C.R.R. § 253 (1994). At Hearing A, plaintiff called two DOCS corrections officers as witnesses. Both testified, one in person and the other over the telephone from his home. (Ex. A at 23–25)

As noted above, plaintiff was excluded from Hearing C. The hearing officer, defendant Patterson, made a detailed inquiry into plaintiff's behavior. Patterson questioned a corrections officer, who said that prior to the hearing plaintiff had threatened to throw urine and feces at the staff and otherwise to "do bodily harm" to DOCS personnel, and in fact had thrown feces and urine a number of times over the preceding two days. The corrections officer said also that plaintiff had been informed that his behavior would result in his being excluded from the hearing, which only provoked more threats from plaintiff. The exclusion of plaintiff prevented him from calling witnesses at the hearing, and it appears that he did not do so beforehand. After inquiring about plaintiff's behavior, Patterson concluded that plaintiff had "declined to call witnesses." (Ex. C at 2–4)

As noted above, plaintiff refused to attend Hearing F. Lt. DiBiase, the hearing officer, examined the Selection Form to determine if plaintiff wanted any witnesses. (Ex. F at 11–12) The Selection Form indicates that plaintiff selected an assistant and that the

---

3. The Selection Forms used in the proceedings against Dawes contain space for the assistant to take notes on his investigation, either on the piece of paper that contains the list of assistants or on a separate attached page. (*See, e.g.,* Exs. A at 11, C at 8–9)

4. Each hearing was recorded on tape. Transcripts of the recordings constitute the bulk of the evidence regarding the conduct of the hearings, in addition to a few different kinds of forms that were filled out by the hearing officer in each case either during or after the conclusion of the hearing in question.

assistant interviewed one inmate and the corrections officer who filed the Report against plaintiff. Next to the inmate's name is a note indicating that plaintiff did not want the inmate as a witness. There is no indication on the Selection Form that plaintiff wanted the corrections officer to be called. Rather, there is a list of questions for the officer and a series of yes or no answers next to each question. (Ex. F at 9) Based on this Form, Lt. DiBiase concluded that plaintiff did not want any witnesses.

3. Hearing I focused on a violent series of events that ended with plaintiff breaking a guard's watch. Harrison was the hearing officer. He interviewed the witnesses plaintiff requested out of the presence of plaintiff but on the record. (Ex. I at 3) Harrison was not persuaded by their testimony, however, and he found plaintiff guilty of destroying the watch.

### Disciplinary Proceedings—Restitution and Appeal

At the conclusion of each hearing, plaintiff was ordered pursuant to DOCS regulations to pay restitution for the property he had destroyed.[5] On no occasion did the hearing officer make findings on how much pecuniary loss plaintiff had caused to DOCS. Indeed, although the hearing officers made no specific reference to it, the only evidence of such loss is in the Hearing G and I records, in which the cost of the damaged item was written in the Report or mentioned at the hearing. (Ex. G at 5; Ex. I at 47) Inexplicably, defendants have not submitted any evidence from outside the records of the other hearings to show that plaintiff caused DOCS to suffer pecuniary loss at least roughly equivalent to the amounts plaintiff was ordered to pay as restitution. However, the evidence does indicate that the amounts of restitution imposed were consistently of a low amount and that damage to identical items in different cases resulted in restitution of identical amounts: plaintiff was charged $93.44 each of the three times he damaged the plexiglass on his cell bars, (Ex. A at 3; Ex. D at 1; Ex. E at 3), $67.95 for each set of shaving clippers broken, (Ex. F at 2; Ex. G at 1), and approximately $5 for each

ripped sheet (Ex. B at 3; Ex. H at 1). There is no evidence that these awards were incorrect valuations of the damages.

Finally, plaintiff claims that the last step of each proceeding was an appeal to DSP Carpenter, who allegedly affirmed in every instance. The evidence shows, however, that Carpenter in fact did not review Hearings F, G and H (Ex. F at 1; Ex. G at 1; Ex. H at 1) and that he did review Hearings A and E (Ex. A at 1; Ex. E at 1). There is no evidence regarding whether Carpenter reviewed the other hearings or, indeed, whether some of these hearings even were appealed.

### The Change in Postage Policy

Prior to April 28, 1992, DOCS provided inmates with free regular first class postage for the equivalent of five one ounce letters per week. Effective April 28, 1992, the policy was changed, and this subsidy was limited to privileged correspondence only. Privileged correspondence includes mail between an inmate and certain public officials or agencies, such as courts, attorneys, and other government officials. 7 N.Y.C.R.R. § 721.2 (1994). The change was prompted by budgetary concerns. (Jones Aff. ¶ 4)

The elimination of free postage did not overly restrict most prisoners' ability to conduct non-privileged communication with people outside the prisons. Inmates may receive incoming mail and visitors, make collect phone calls, and purchase stamps with money earned while in prison. 7 N.Y.C.R.R. §§ 720.4, 720.8(3) (1994). All inmates are assigned jobs in which they earn $.60 to $1.55 per day or, if no jobs are available, they earn idle pay of $.45 per day. (Jones Aff. ¶ 9) Plaintiff claims that these other means of communication were not available to him because (1) he was continuously held in SHU from April 28, 1992 until an unspecified point, and (2) he could not buy stamps because of an encumbrance on his prison bank account occasioned by the judgments of restitution against him.

In August 1992, DOCS initiated a regulation evidently addressed to prisoners in

5. 7 N.Y.C.R.R. §§ 253.7(a)(iv), 254.7(a)(iv) (1994).

plaintiff's predicament. It provides that "[f]unds *may* be advanced to an inmate for postage for one first class one ounce letter per month [if] ... [t]he inmate has been confined to SHU for discipline or administrative segregation for 30 days or more, and has a zero or negative account balance," or if the inmate falls into either of two sets of other circumstances wherein there is no opportunity to initiate outgoing communication. 7 N.Y.C.R.R. § 720.8(5)(d) (1994) (emphasis added). Plaintiff claims he never was notified of this policy and never received any stamps pursuant to it. (Dawes Aff. at 3)

*Discussion*

*The Due Process Claims*

Defendants contend that they are entitled to summary judgment because the undisputed facts show that plaintiff cannot make out a *prima facie* case based on any of the alleged procedural errors. Alternatively, they claim they are entitled to immunity or cannot be liable because plaintiff in each instance was entitled not to the process that he claims was appropriate, but only to the post-deprivation remedy provided by New York State's Article 78 procedure. We address these contentions with respect to each claim.

*Due Process—The Right to Assistance*

■ Plaintiff claims he was denied assistance in preparing for Hearings A, C, and F. (Cpt ¶¶ 2, 5) Pursuant to *Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988), and *Wolff v. McDonnell,* 418 U.S. 539, 570–71, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974), an inmate must be offered assistance if the inmate is confined to SHU prior to the hearing, as plaintiff was in every instance, because an inmate cannot adequately prepare a defense while confined. An assistant, however, is merely a surrogate for the inmate, not a legal adviser or advocate. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993). In consequence, an assistant is not required to go beyond an inmate's specific instructions in preparing for a hearing. *Id.* It necessarily follows that there is no duty to provide assistance to an inmate who does not want it.

Plaintiff's claims based on Hearings C and F are meritless. Plaintiff refused to select an assistant to help him prepare for Hearing

C. He was assisted prior to Hearing F, and he does not claim that the assistance was inadequate. Thus, both claims are rejected.

Plaintiff was not assisted prior to Hearing A even though he was in SHU and had requested an assistant. The only defendant conceivably responsible for this error, if it was error, was Lt. Shovah, the Hearing A hearing officer. Although Shovah himself did not deny assistance to plaintiff, a supervisory official may be liable for civil rights violations if the official was aware of the allegedly wrongful conduct and did nothing to remedy it. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Shovah's liability thus turns, at least in part, on his actual state of mind at the hearing, i.e., whether he was on notice of a violation. Shovah has submitted no affidavits describing his actual state of mind at the hearing, thus preventing a conclusion that he did not have notice of a constitutional infraction.

■ Defendants contend that Shovah nevertheless is entitled to qualified immunity whatever his actual state of mind. Pursuant to *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), an official is immune from Section 1983 liability if the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The Second Circuit held in *Cecere v. City of New York,* 967 F.2d 826 (2d Cir.1992), that, pursuant to *Harlow,* an official may be immune from liability if the official can show that the official had an objectively reasonable belief, at the time of the hearing and based on the information then possessed, that the official's acts did not violate plaintiff's clearly established rights. *See also Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288, 1292 (2d Cir.1990); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987). Defendants do not meet this standard with respect to Shovah because they have failed to produce any evidence of what his actual beliefs were at the hearing. Such evidence is necessary in order to permit the Court to evaluate whether such beliefs were objectively reasonable in light of the circum-

stances. The defendant has not sustained his immunity defense on this motion.

Finally, defendants say they are protected by *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). *Zinermon* held that no procedural due process right is violated if there is an adequate post-deprivation remedy for the alleged violation, where additional pre-deprivation procedures could not reasonably have prevented the deprivation. It is undisputed that Shovah knew that plaintiff had not received assistance. To insure that plaintiff received assistance if any was due, Shovah simply could have postponed the hearing or interviewed the correction officer who signed the September 20 Selection Form to determine the veracity of plaintiff's claim, either of which would have been reasonable pre-deprivation procedure. *See Cecere,* 967 F.2d at 829 (supervisory official may examine subordinate prior to deprivation if there is reasonable cause to believe that a constitutional violation has occurred). Therefore, defendants' motion on this basis is rejected.

*Due Process—The Right to Attend Hearings*

Plaintiff claims that he was excluded improperly from Hearings B and F. (Cpt ¶¶ 5, 13) Prisoners have a right to attend hearings against them unless a penological purpose is served by their exclusion. A legitimate threat of violence by the inmate can justify exclusion. *Payne v. Axelrod,* 871 F.Supp. 1551, 1557 (N.D.N.Y.1995); *Malik v. Tanner,* 697 F.Supp. 1294 (S.D.N.Y.1988). It is not disputed that plaintiff threatened violence prior to Hearing B. Thus, excluding plaintiff was justified and his claim is rejected. Nor can plaintiff complain that he was excluded from Hearing F because he refused to attend of his own volition. Due process requires only that an accused have an opportunity to be heard, an opportunity that can be waived as plaintiff did here. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). His claim on this basis is meritless.

*Due Process—Witnesses*

Plaintiff argues both that he was denied witnesses improperly at Hearings A, C and F and that he was excluded incorrectly from attending the testimony of favorable witnesses at Hearing I. (Cpt ¶¶ 2, 5, 13)

Plaintiff's claim that his exclusion from the testimony of friendly witnesses at Hearing I violated the Fourteenth Amendment has no merit because inmates have no right to attend such testimony. *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989).

Plaintiff's claim regarding the alleged denial of witnesses at Hearing A must be rejected because he called two corrections officers and both testified. With respect to Hearings C and F, despite the fact that plaintiff did not attend either hearing, and no witnesses were designated beforehand in either instance, plaintiff still maintains that he was denied witnesses. Defendants counter that the right to call witnesses was waived both before the hearings, when plaintiff rejected assistance or refused to identify witnesses to his assistant, and at the hearings, when he refused to attend or behaved such that he was lawfully excluded.

The Supreme Court has held that waivers of constitutional rights either "must be voluntary ... [and] ... knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences," *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970), or implied by, *inter alia,* a party's refusal to comply with the conduct of the proceeding by engaging in obstreperous conduct. *See Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (an accused may, by obstreperous conduct, waive his right to be personally present at his criminal trial). The first sort of waiver is not at issue here because there is no evidence in the record that plaintiff knowingly waived his right to call witnesses, as distinct from other related rights waived by him. The second sort of waiver is applicable, however, because it is undisputed that plaintiff either waived his rights to assistance and to attend the hearing or acted in such a way that they legitimately were forfeited. In so doing, plaintiff deprived himself of the opportunities to call witnesses provided both before and at the hearings by DOCS regulations. The Court concludes that plaintiff's refusal to cooperate with these procedures acted to waive his due process right to call

witnesses. In consequence, this claim must be rejected.

*Due Process—Restitution Penalties*

Plaintiff has two complaints about the restitution penalties imposed on him. First, he claims that they were levied by the hearing officers in retaliation for his frequent litigation against DOCS. This argument has no merit. Plaintiff would have the burden of proving at trial that the defendants would not have imposed restitution but for a retaliatory motive. *Howard v. Leonardo,* 845 F.Supp. 943, 948 (N.D.N.Y.1994); *Hilliard v. Scully,* 648 F.Supp. 1479 (S.D.N.Y.1986); *Majid v. Henderson,* 533 F.Supp. 1257, 1270 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982). The defendants have shown on this motion, on the undisputed facts, that plaintiff would be unable to carry this burden. Plaintiff has failed even to suggest that the amounts imposed as restitution would not have been imposed if the hearing officers had possessed no retaliatory purpose. Indeed, there is no evidence that the amounts of restitution were incorrect valuations of the damage plaintiff caused. Moreover, plaintiff does not deny that he damaged the items that he was convicted of damaging. This claim therefore is rejected.

Plaintiff next complains that there was no evidence to support the amount of restitution imposed against him. As noted above, there was no such evidence except at Hearings G and I. Plaintiff claims that the imposition of restitution without this evidence violated the Fourteenth Amendment, both in itself and because it prevented him from challenging any such evidence at the hearing and resulted in a written record devoid of any statement that would permit an outside authority to review the accuracy and fairness of the awards.

Plaintiff cannot complain that the lack of evidence deprived him of an ability to challenge the bases of the awards at the hearings because prisoners have no right to confrontation or cross-examination. *Wolff,* 418 U.S. at 567–68, 94 S.Ct. at 2980–81. However, plaintiff's other two contentions have some merit, as *Wolff* requires a written record of the basis of a decision against an inmate, 418 U.S. at 564–65, 94 S.Ct. at 2978–79, and

*Superintendent of Massachusetts v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), requires that such decisions be based on at least "some evidence." Construing the total lack of evidence in plaintiff's favor, as it is required to do insofar as defendants are moving for summary judgment, the Court cannot conclude that plaintiff will be incapable of making a *prima facie* claim on this basis at trial.

Defendants argue nonetheless that three alternative theories warrant summary judgment in their favor. First, they maintain that qualified immunity shields them from liability. But the right to have findings based on "some evidence" was clearly established at the time of these hearings, and the hearing officers should reasonably have known of that right. Similarly, plaintiff was clearly entitled to a written record of the basis of their decisions, pursuant to *Wolff,* and the hearing officers reasonably should have known of this right at the time of these hearings. Defendants therefore are not protected by qualified immunity.

Defendants next contend that Patterson, as an outside attorney not employed by GMCF, is entitled to absolute judicial immunity. The Court previously has rejected this argument in *Payne,* 871 F.Supp. at 1553.

Moreover, defendants say they are protected by *Zinermon,* 494 U.S. 113, 110 S.Ct. 975. As noted above, *Zinermon* held that no procedural due process right is violated if there is an adequate post-deprivation remedy for the alleged violation, where additional pre-deprivation procedures could not reasonably have prevented the deprivation. Mere entry of evidence into the hearing record concerning the cost of the items at issue reasonably could have prevented the alleged errors. Defendants' argument under *Zinermon* therefore is rejected.

Finally, although defendants do not argue the point, it is obvious from the record that plaintiff's claim against DSP Carpenter cannot stand with respect to some of the hearings at issue. Officials may be liable under Section 1983 only if they were personally involved in the alleged deprivation of constitutional rights. *Monell v. Department of*

*Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *Al–Jundi v. Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). An officer who learns of a violation on appeal and fails to remedy the wrong may be liable. *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986); *see, e.g., United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 589 (2d Cir.1975). Here, the undisputed evidence shows that Carpenter did not review Hearings F, G and I. In consequence, Carpenter cannot be liable for any procedural errors that might have occurred at those hearings. With respect to the other hearings, the evidence is either that Carpenter did review them or it is inconclusive on the issue. In sum, Carpenter is entitled to summary judgment with respect to plaintiff's claims regarding the imposition of restitution in Hearings F, G and I.

While defendants are not entitled to summary judgment on some aspects of this claim, it does not follow that plaintiff must prevail. Insofar as plaintiff is moving for summary judgment, the Court must construe the evidence in favor of the defendants. The awards are consistent throughout the hearings in the amounts exacted for damage to identical objects. For example, plaintiff was charged $93.44 for the three times he broke the plexiglass on his cell bars. Therefore, although there is no direct evidence of the value of the items in question the consistency of the fines permits an inference that the defendants referred to an as yet unidentified schedule of costs when setting restitution. Such a schedule could be some evidence of the amount of damage caused by plaintiff. Moreover, if such a schedule exists, then it would provide all of the documentation that plaintiff is entitled to for purposes of outside review of a hearing officer's actions. Plaintiff's motion for summary judgment on this claim therefore is denied.

*The First Amendment—The Postage Policy*

Plaintiff argues that the State is required to provide postage to permit inmates to conduct non-legal correspondence and that the elimination of DOCS' free non-legal postage policy therefore is unconstitutional. Inmates, upon commitment to prison, retain the constitutional rights of free citizens to the extent permitted by prison life. Like free citizens, inmates have a constitutionally protected interest in conducting non-legal correspondence. *See Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). However, the Constitution does not require the State to subsidize inmates to permit such correspondence to be conducted by mail when other means of communication are available to the general prison population. Such an entitlement would expand upon the rights of free citizens, and there is no reason in this context for such an expansion.[6] *Hershberger v. Scaletta,* 33 F.3d 955, 956 (8th Cir.1994).

In this case, however, plaintiff says that he had no alternative means of communication because his confinement in SHU and the lien on his account prevent him from using the telephone and buying stamps. He therefore claims that the State, which put him in this position, must bear the costs of maintaining a conduit for him to communicate with the outside.

The Court disagrees. These incidental restrictions on First Amendment freedoms are justified if the they are necessary to serve a legitimate government interest such as that in order, security or rehabilitation. *Procunier,* 416 U.S. 396, 94 S.Ct. 1800; *Thornburgh,* 490 U.S. 401, 109 S.Ct. 1874. Plaintiff does not claim that the restrictions were unnecessary or illegitimate. Indeed, given that they are the result of valid punishments for misbehavior, the restrictions appear to have been directly related to the State's interest in order and security. Plaintiff's claim on this basis therefore is without merit.

Finally, plaintiff complains that he was not given a monthly stamp pursuant to 7 N.Y.C.R.R. § 720.8(5)(d) (1993). Plaintiff had no constitutional right to that stamp. A person has a liberty or property entitlement to government largess to the extent the gov-

---

**6.** In contrast, the State must pay for an inmate's legal mail in order to insure access to the courts.

*Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

ernment enactment creating the alleged entitlement contains language that limits official discretion in disbursing the largesse. Here, the pertinent regulation explicitly says that a stamp *may* be given to an inmate in the specified circumstances once per month. 7 N.Y.C.R.R. § 720.8(5)(d) (1993). As a result, plaintiff cannot claim an entitlement to the stamp because its disbursement is within the discretion of DOCS officials. *Deane v. Dunbar,* 777 F.2d 871, 875 (2d Cir.1985).

### Conclusion

Defendants' motion is denied with respect to plaintiff's claims based on the lack of evidence for the imposition of restitution payments at Hearings A, B, C, D, E, F, and H, and based on Lt. Shovah's alleged denial of assistance at Hearing A, but otherwise is granted in all respects. Carpenter is granted summary judgment with respect to plaintiff's claims of error in Hearings F, G and I. Plaintiff's motion is denied.

SO ORDERED.