Floyd **CHARLES,** Plaintiff,

v.

Thomas **COUGHLIN, Commissioner of New York State Department of Correctional Services; Gerald A. Wells, Deputy Superintendent; and Beatrice Kikendall, Correctional Superintendent, Defendants.**

**Civil Action No. CV–95–0217(DGT).**

United States District Court, E.D. New York.

Nov. 24, 1997.

---

Floyd Charles, pro se.

Dennis C. Vacco, N.Y.S. Atty. General by Valerie Singleton, New York City, for Defendant.

## *MEMORANDUM AND ORDER*

TRAGER, District Judge.

Plaintiff, pro se, Floyd Charles filed this action pursuant to 42 U.S.C. § 1983, alleging the deprivation of his constitutional right to due process during his Tier III disciplinary hearing at the Arthur Kill Correctional Facility. At this hearing, plaintiff was found guilty of participating in an attack on another inmate, Henry Gordon, with a "knife-like object," and was sentenced to 600 days imprisonment in the Special Housing Unit ("SHU"), 600 days loss of packages, 600 days loss of phone and recreation, and a recommendation for 18 months loss of good time. See Def. Mem. Supp. Mot. to Dismiss Exh. C, Hearing Tr. ("Tr.") at 15. Specifically, plaintiff claims that 1) he was not allowed to call witnesses at his Tier III hearing; 2) an adverse witness was allowed to testify after the witness had been present during the proceeding; 3) plaintiff was improperly denied access to documentary evidence in the form of the misbehavior reports of the other inmates accused of the attack; 4) he was transferred from Arthur Kill Correctional Facility to Downstate Correctional Facility during the course of his proceeding (which prevented him from calling additional witnesses); 5) he was found guilty of the violations on the basis of insufficient evidence; and 6) the portion of the Tier III hearing transcript that contained testimony from the victim, inmate Gordon, was improperly excised. *See* Amend. Compl. Plaintiff seeks $1,000,000 in damages. *See* Amend. Compl. at 23–24.

Defendants moved to dismiss the amended complaint. Plaintiff moved for appointment of counsel, which was denied, and also for summary judgment. Because a significant documentary record had accumulated since the filing of defendants' motion to dismiss, that motion was converted to a motion for summary judgment by this Court with notice to plaintiff and an opportunity for him to respond. For the reasons stated herein, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

## Background

At approximately 7:45 a.m. on April 28, 1994, inmate Henry Gordon was assaulted with a sharp "knife-like" object and suffered "deep penetrating wounds" that resulted in Gordon's hospitalization. See Def. Mem. Supp. Mot. to Dismiss at 2 & Exh. B. According to Gordon, he believed that this attack had something to do with a soccer game that had occurred on the evening of April 27. *See* Def. Mem. Supp. Mot. to Dismiss Exh. E, Gordon Statement.

On April 29, Sergeant Beatrice Kikendall interviewed Gordon at the hospital and showed him a photo lineup of approximately nine inmates who "were associated with the soccer game or the Rastafarian group, or Jamaican group...." Tr. at 9. She stated at the Tier III hearing that she "tried to get very similar facial features and very similar looks ..." Tr. at 9–10. Although the inmates' names were affixed to their pictures, the Sergeant "fixed them so [Gordon] couldn't name anybody by name." Tr. at 9. Gordon picked three inmates, including Charles, out of the photo lineup. *See* Wells Aff. Exh. C, Gordon Tr. at 8, 11. According to Sergeant Kikendall, Gordon "pointed to Charles's picture and then refered [sic] to him as he had a nickname but then he gave me his name—Floyd Charles." Tr. at 9. The Sergeant then wrote out a statement, signed by Mr. Gordon, which detailed the attack and asserted that Charles (also known as "Starkey") stabbed him in the stomach. See Def. Mem. Supp. Mot. to Dismiss Exh. E, Gordon Statement.

On April 29 Sergeant Kikendall issued an inmate misbehavior report for Charles, charging him with violations of 7 NYCRR

§§ 001.00 ("Penal Law Offense"), 100.10 ("Assault on Inmate") and 104.11 ("Violent Conduct"). *See* Def. Mem. Supp. Mot. to Dismiss Exh. B; Wells Aff. dated 8/1/97 ¶ 5. Formal charges were served on Charles on April 30 at 9:40 a.m. *See* Tr. at 1. At 1:05 p.m. on April 30, Charles was provided with an Assistant to help him prepare for his Tier III hearing. See Tr. at 1; Def. Mem. Supp. Mot. to Dismiss Exh. F, Assistant Form. In his Assistant Form, Charles indicated that he wanted to interview as potential witnesses: inmate Errol Peters, inmate Henry Gordon, Lieutenant Nico, and Sergeant Kikendall. He also requested the misbehavior reports of the other inmates accused in this incident.

Charles's Tier III hearing was conducted by defendant Gerald A. Wells on May 2, 1994 at the Arthur Kill Correctional Facility and completed on May 10, 1994 at the Downstate Correctional Facility. *See* Tr.; Amend. Compl. at 11. Charles pled not guilty to each charge. *See* Tr. at 1. During the course of the hearing, Hearing Officer Wells granted Charles's request to call each witness he had listed on the Assistant Form: inmate Errol Peters, Lieutenant Nico, Sergeant Kikendall, and inmate Henry Gordon (the victim of the attack who testified later in the day telephonically from his hospital bed).

Plaintiff makes much of the fact that during the pendency of this case, defendants represented that inmate Gordon did not testify at the hearing. This representation was made based on the fact that the first official transcript of the hearing did not reflect testimony from inmate Gordon. *See* Ltr. to Ct. from Valerie Singleton, Esq., Attorney for Defendants, dated 9/8/95. Hearing Officer Wells states at the end of the first official transcript that at that time he was not permitting inmate Gordon to testify, but that he would consider permitting him to do so. There is no indication in the first official transcript that Gordon ever testified, as the first official transcript of the Tier III proceeding jumps from May 2, 1994 at 10:43 a.m. to May 10, 1994 at 9:16 a.m. However, because plaintiff insisted that inmate Gordon had, in fact, testified at the hearing, this Court requested that defendants present some response to plaintiff's allegation. As it happens:

> Inmate Gordon did testify while hospitalized on May 2, 1994 via a speakerphone. Plaintiff was present during the testimony. This testimony would not be reflected in the hearing transcript. Inmate Gordon's testimony was recorded on another tape, which was mislabelled and believed to be lost. However, that tape was finally located and transcribed.

Wells Aff. dated 8/1/97 ¶ 7 (citations omitted). Thus, there is an afternoon portion of the May 2, 1994 proceeding that was not captured on the first official transcript.

Both the first official transcript and the additional transcript reflect that at the commencement of each witness's testimony, Hearing Officer Wells instructed: "[a]ny questions he [Charles] would like to ask you will be put to me and I will determine as to whether or not I will pose said question to you." *See, e.g.,* Tr. at 3; Wells Aff. Exh. C, Gordon Tr. at 1–4. The hearing transcript reflects that Hearing Officer Wells allowed all of Charles's questions, and truncated his examinations only once, when he believed that Charles was "interrogat[ing]" Sergeant Kikendall. Tr. at 10. However, even as to this witness, later in the morning Hearing Officer Wells asked Charles specifically if he wished to comment on the testimony of any of the witnesses "[u]p to and including Sgt. Kikendall because there WAS something you wanted to say about Sgt. Kikendall's testimony and, as I recall, I would not let you say it at that time." Tr. at 14 (emphasis in original). The only other comment bordering on an admonition occurred when Hearing Officer Wells encouraged plaintiff, who was questioning inmate Gordon, to "[m]ake your statement short. The guy is testifying while he is in a serious health condition, and I'm not going to disturb Mr. Gordon's health by putting him through a third degree. So make your questions short and to the point." Wells Aff. Exh. C, Gordon Tr. at 11. Gordon testified that plaintiff both started the altercation and stabbed him. *See id.* at 6–7, 11.

Hearing Officer Wells also called two witnesses: Corrections Officer Gatti, who testified that Gordon (who had provided him with

reliable information in the past) told him that "Starkey" had stabbed him. Tr. at 3–4. Wells also called Corrections Lieutenant Tyner, who testified that he "spoke at length with inmate Gordon ... who ... expressed to me his disappointment in the fact that inmate Floyd Charles had stabbed him in the stomach because he thought they were friends ..." Tr. at 13. Hearing Officer Wells stated on the record that Lieutenant Tyner had been observing the duration of the hearing because he had recently been made a Lieutenant and was "in the learning process." Tr. at 14.

In addition to the four witnesses requested by plaintiff, he also asked for the misbehavior reports of the other inmates who had been apprehended with respect to the attack on Gordon. *See* Tr. at 6; Def. Mem. Supp. Mot. to Dismiss Exh. F, Assistant Form. When Hearing Officer Wells did not permit plaintiff to view these reports, plaintiff stated: "You don't have to give them to me, Sir, I would like you to read them and for you to check them." Tr. at 6. Plaintiff indicated that he wished Hearing Officer Wells to review the other reports because they were written on April 28, while his was written on April 29. Hearing Officer Wells stipulated for the record that this was true. He also told Charles:

> For the record, this hearing officer wants to state, once again, that he will review all evidence available to him at the time of the conclusion of this hearing, and prior to his making a written decision, up to and including what misbehavior reports are however tangentially related to this incident. To give up a misbehavior report that was written on another inmate and make that available to this inmate would not be appropriate. OK.

Tr. at 7.

At the conclusion of the morning session of the Tier III hearing, wherein all of the witnesses testified with the exception of inmate Gordon, Hearing Officer Wells asked if plaintiff had "[a]nything else?" Tr. at 15. Plaintiff responded "No, Sir. Would I be given the witness, Mr. Gordon?" *Id.* Hearing Officer Wells replied: "If I make the determination

that it is suitable and in the interest of the facility and will not be a harm or hardship to the facility, to Mr. Gordon, or to you or any staff member, at that point I will make a determination and he will be allowed to testify either in your presence or not." *Id.* As previously noted, this portion of the hearing ended at 10:43 a.m. *See id.* Subsequently, Hearing Officer Wells did permit inmate Gordon to testify via telephone later in the day.[1] Charles was permitted to pose questions to ask inmate Gordon. At the conclusion of Gordon's testimony, Charles did not indicate that he wished to call any additional witnesses (nor were any other witnesses listed on his Assistant Form).

On May 9, 1994, plaintiff was transferred to Downstate Correctional Facility. *See* Amend. Compl. at 11 On May 10, 1994, Hearing Officer Wells reconvened the hearing and read his findings into the record. He found plaintiff guilty of all charges, relying on the misbehavior report of Sergeant Kikendall and the testimony of Corrections Officer Gatti and the testimony of inmate Gordon that inmate Charles had stabbed him. *See* Tr. at 15. Plaintiff was sentenced to 600 days in SHU, 600 days loss of packages, and 600 days loss of phone and recreation, and a recommendation of 18 months loss of good time. *See id.*

Immediately after Hearing Officer Wells read this disposition into the record, plaintiff stated: "I would like to object because I didn't finish calling my witnesses, Sir." *Id.* Wells responded: "At the time we concluded this hearing you stated you had no further witnesses. You have more witnesses?" *Id.* Plaintiff replied: "The officer from SHU saw me sitting there in front of the hearing office. I was going to call him as a witness Sir." *Id.* Presumably, this officer would have exculpated plaintiff by providing him with an alibi for the time of the attack on Gordon. At this point, Wells directed plaintiff to sign the disposition; plaintiff refused, arguing: "I did not call all my witnesses ... That wasn't the last time we were supposed to speak on this and you just cut me off to go to court, Sir." Tr. at 16. The Hearing Officer provided him

**1.** As noted, the transcript of this afternoon session was initially lost.

with a copy of the disposition and notified plaintiff that he had the right to appeal. *Id.* at 16.

## Discussion

█ In order to determine whether an award of damages pursuant to § 1983 is appropriate, a two-pronged inquiry must be conducted: first, whether plaintiff had a protected liberty interest in not being confined to SHU for 600 days; and, if so, second, whether plaintiff suffered the deprivation of that liberty interest without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir.1996) (citation omitted).

Subsequent to *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), courts have suffered some consternation seeking to determine what duration and condition of confinement constitutes an "atypical and significant hardship" such that it triggers a protected liberty interest. *See, e.g., Gonzalez v. Coughlin*, 969 F.Supp. 256 (S.D.N.Y.1997); *Duncan v. Keane*, No. 95 CIV. 1090, 1997 WL 328070 at *2 (S.D.N.Y. June 13, 1997) (collecting cases); *Lee v. Coughlin*, No. 93 CIV. 8952, 1997 WL 193179 at *2 & n. 2 (S.D.N.Y. April 18, 1997) (collecting cases). Assuming that 600 days' confinement in SHU does implicate a protected liberty interest under *Sandin*, nonetheless, plaintiff here does not succeed with his § 1983 claim because his Tier III hearing afforded him all the process he was due.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court articulated the protections that must be afforded prisoners in disciplinary proceedings: prisoners must be given twenty-fours hours notice of the charges against them, a written statement of the evidence relied on by the hearing officer, and the factual predicates for the punishment imposed by the hearing officer. *See Moolenaar v. Finn*, No. 94 CIV. 6778, 1996 WL 112200 (S.D.N.Y. March 14, 1996) at *3 (citing *Wolff*, 418 U.S. at 563–65, 94 S.Ct. at 2978–2979). In addition, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safe-ty or correctional goals." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979.

█ Plaintiff makes five general allegations about the manner in which his due process was violated during his hearing. First, he claims that by excising the portion of the transcript containing Gordon's testimony, defendants deprived him of due process. Although it is unfortunate that the tape of inmate Gordon's testimony was lost, there is no evidence to suggest that defendants in any way intended to mislead the court or plaintiff. If anything, now that this portion of the hearing transcript has been located, it provides even more evidence that Charles's due process rights were protected. In light of Gordon's weakened condition in the hospital, the fact that Hearing Officer Wells granted plaintiff's request that inmate Gordon testify provides compelling evidence that the hearing officer sought to protect plaintiff's due process rights and that they were more than adequately protected during his hearing.

█ Plaintiff also claims that defendants refused to allow him to call witnesses. However, the transcript clearly reflects that each witness that plaintiff had listed on his Assistant Form was permitted to testify (including inmate Gordon). When asked at the end of the morning session on May 2 whether he had anything additional to present, plaintiff asked *only* that Gordon be permitted to testify. Hearing Officer Wells complied with that request. At the conclusion of Gordon's testimony, there is *no* indication that plaintiff asked for any additional witnesses. Although there is an indication that Hearing Officer Wells was wanted elsewhere, see Wells Aff. Exh. C, Gordon Tr. at 12, plaintiff made no subsequent requests for witnesses and asked only that defendant Wells read out the misbehavior reports of the other inmates accused in connection with the attack. *See id.* at 13. *See Bedoya v. Coughlin*, 91 F.3d 349, 353 (2d Cir.1996) (holding that where plaintiff had indicated that he wanted a witness to be summoned at the beginning of his hearing, "[t]he plaintiff's failure to request the witness's appearance prior to the close of the hearing, and his acquiescence in the hearing officer's decision to end the hearing,

constituted a waiver of any right he may have had to call the witness."). Moreover "[f]ederal and state courts in this circuit have recognized that an inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing." *Id.* at 352 (citing cases). Only after hearing Wells's decision did plaintiff belatedly raise the issue of wanting this new witness. Plaintiff's "bald assertion" in his papers that he was deprived of the right to call a witness is meritless. *See Moolenaar v. Finn,* No. 94 CIV. 6778, 1996 WL 112200 at *4 (S.D.N.Y. March 14, 1996).

Although plaintiff insists that he had intended to call this hearing officer who would provide him with an alibi, it is patently incredible that the name of this officer—who would have completely exculpated plaintiff— would not have appeared on plaintiff's Assistant Form or that his name would not have been mentioned at any prior point in the entire hearing. Thus, plaintiff's last-minute attempt to reopen the hearing on May 10, 1994 to call an additional witness, after Hearing Officer Wells had read his disposition into the record, does not present a genuine issue of material fact warranting the denial of summary judgment.

■ This finding is also probative of Charles's allegation that defendants violated his constitutional rights by permitting him to be transferred from Arthur Kill Correctional Facility to Downstate Correctional Facility during the course of his proceeding (which, he claims, prevented him from calling additional witnesses). Because there was no indication that plaintiff intended to call an additional witness, transferring him to another facility certainly did not deprive him of his due process to call such a phantom witness.

■ Plaintiff also complains that Hearing Officer Wells allowed an adverse witness to testify after he had been present during the proceeding. This is accurate, but it does not constitute a deprivation of due process. "Despite establishing minimal due process standards for prison disciplinary hearings, the Supreme Court has made clear that such hearings 'are not part of a criminal prosecution with the full panoply of rights due a defendant in such proceedings does not ap-

ply'." *Greaves v. State of New York,* No. 95 CIV. 9725, 1997 WL 278109 at * 3 (S.D.N.Y. May 22, 1997) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)). Moreover, Hearing Officer Wells did not rely on the testimony of this witness in his disposition. *See* Tr. at 15. The exclusion of witnesses is discretionary. But, even assuming that this testimony was improper, plaintiff was not prejudiced. Defendant Wells did not take it into account when making his determination regarding plaintiff's guilt.

■ Plaintiff also argues that Hearing Officer Wells found him guilty of participating in the attack on the basis of insufficient evidence.

In prison disciplinary hearings, only a "modicum of evidence" is required. Ascertaining whether there is a "modicum of evidence" to support a conviction after a disciplinary hearing does not require the Court to balance the evidence presented in Plaintiff's defense against the evidence supporting Plaintiff's conviction. The only relevant question is "whether there is any evidence in the record that could support the conclusion" reached by Defendant.

*Hutchinson v. Blaetz,* No. 94 CIV. 3695, 1996 WL 374164 at * 5 (S.D.N.Y. July 1, 1996) (quoting *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985)). Here, there was ample evidence on the record to support Wells's determination of guilt. Sergeant Kikendall testified that inmate Gordon identified plaintiff as his attacker; Gordon testified to such on the record; and Corrections Officer Gatti testified that Gordon had provided reliable information in the past.

■ Finally, Charles argues that Hearing Officer Wells denied him documentary evidence in the form of the misbehavior reports of the other inmates accused of the attack. However, plaintiff stated on the record that "[y]ou don't have to give them to me, Sir." Tr. at 6. Thus plaintiff waived his request for the documents themselves. Moreover, at plaintiff's behest, Hearing Officer Wells stipulated on the record that the date on plaintiff's misbehavior report was a day after

those on the other reports.[2] *See id.* at 7. Wells also clearly stated that furnishing the reports to plaintiff would not be appropriate, although he would review and consider each one carefully. *See id.* Thus, this failure to actually hand over the documents to plaintiff does not constitute a deprivation of due process. Nor do any of plaintiff's other claims.

### Conclusion

As there is no genuine issue of material fact, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The Clerk of the Court is instructed to enter judgment in accordance with these instructions and close the case.

2. This fact presumably tended to support Charles's claim that others were responsible for the attack on Gordon.