Joe JACKSON and Ruby Jackson, Plaintiffs,

v.

C.O. Thomas JOHNSON and Glenn S. Goord, Commissioner of Correctional Services, Defendants.

No. 97 CIV. 1592 (LAK)(AJP).

United States District Court, S.D. New York.

Nov. 24, 1998.

Joe Jackson, Alden, NY, Pro se.

Ruby Jackson, New York City, Pro se.

Richard Cardinale, Asst. Attorney General, New York City, for Defendants.

## ORDER

KAPLAN, District Judge.

By report and recommendation dated November 6, 1998, Magistrate Judge Peck recommended that the Court grant defendants' supplemental motion for summary judgment dismissing the action and thus to resolve in defendants' favor the two issues remaining following the Court's prior decision in *Jackson v. Johnson,* 15 F.Supp.2d 341 (S.D.N.Y.

1998), familiarity with which is assumed. Plaintiff has objection to the report and recommendation. The objections. however, are largely conclusory and entirely without merit. Accordingly, the supplementary motion for summary judgment dismissing the action is granted. This closes the case.

SO ORDERED. ·

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

 Presently before the Court is defendants' supplemental summary judgment motion in this 42 U.S.C. § 1983 action.[1] In an opinion dated July 23, 1998, on review of my Report and Recommendation, Judge Kaplan granted defendants' original summary judgment motion except with respect to two issues. *See Jackson v. Johnson*, 15 F.Supp.2d 341 (S.D.N.Y.1998), familiarity with which is assumed.[2]

Judge Kaplan had denied defendants' original motion on Joe Jackson's retaliatory transfer claim because defendants failed to submit affidavits of their lack of involvement in the transfer. *See Jackson v. Johnson*, 15 F.Supp.2d at 353. Judge Kaplan ruled insufficient the affidavit of Fishkill Deputy Superintendent for Security Robert Ercole, based on his review of Jackson's transfer record, that defendants Johnson and Goord "typically" are not involved in such transfers. *Id.* Because defendants Johnson and Goord have now submitted affidavits attesting to their non-involvement in the transfers, the Court recommends granting summary judgment to defendants on this issue. *See* Point I below.

Judge Kaplan also had denied defendants' original summary judgment motion on Jackson's Tier III prison disciplinary hearing due

process claim because, *inter alia*, Johnson alleged that his staff assistant failed to adequately help him prepare for the hearing. *See Jackson v. Johnson*, 15 F.Supp.2d at 351 & n. 64. Defendants' supplemental papers included Jackson's Tier III disciplinary hearing transcript. (Cardinale 8/18/98 Aff. Ex. A.) The transcript made clear that the hearing officer was a Lieutenant Szymanowicz, who is not a defendant in this action, and defendants filed an additional affidavit verifying that defendants Johnson and Goord had no personal involvement in Jackson's Tier III disciplinary hearing. Furthermore, to the extent that Jackson's claim is against the defendants in their official capacity for prospective injunctive relief, it too, is rejected because he failed to allege at the hearing that his due process rights had been violated, thus waiving any claim. Accordingly, the Court recommends that defendants be granted summary judgment on Jackson's disciplinary due process claim. *See* Points II and III below.

## ANALYSIS

### I. THE COURT SHOULD GRANT DEFENDANTS' SUMMARY JUDGMENT MOTION ON JACKSON'S RETALIATORY TRANSFER CLAIM BECAUSE DEFENDANTS WERE NOT PERSONALLY INVOLVED IN JACKSON'S TRANSFER

As noted above, Judge Kaplan had denied defendants' original summary judgment motion on the retaliatory transfer claim based on the inadequate proof of their lack of personal involvement in the transfer. *See Jackson v. Johnson*, 15 F.Supp.2d 341, 351 (S.D.N.Y.1998).

1. Judge Kaplan granted defendants leave to file their supplemental summary judgment motion by memo endorsed order dated July 31, 1998. By letter to Judge Kaplan dated August 17, 1998, Jackson objected to defendants' filing of the supplemental summary judgment motion. In light of Judge Kaplan's Order giving defendants permission, Jackson's letter objection is denied as moot.

By letter dated August 27, 1998, Jackson renewed his request for appointment of counsel. The Court previously denied at least four prior requests by Jackson for appointment of counsel. (*See* Orders dated 5/2/97, 5/20/97, 7/10/97 and 10/20/97.) Appointment of counsel is· not war-

ranted under Second Circuit guidelines where plaintiff's chances of success are slight. *See, e.g., Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir.1989); *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir.1986). In light of the Court's Report and Recommendation herein to grant defendants summary judgment on the remaining issues in the case, the Court again denies Jackson's request for appointment of counsel.

2. For other prior decisions in this case, *see Jackson v. Johnson*, 985 F.Supp. 422 (S.D.N.Y.1997); *Jackson v. Johnson*, 97 Civ. 1592, 1997 WL 397626 (S.D.N.Y. June 16, 1997); *Jackson v. Johnson*, 962 F.Supp. 391 (S.D.N.Y.1997).

■ Defendants now have submitted affidavits attesting that they were not personally involved in the decision to transfer Jackson. Defendant DOCS Commissioner Goord personally attests: "I was not involved in any decisions relating in any way, to the transfer of the plaintiff, Joe Jackson, from Fishkill to Auburn Correctional Facility in 1996, or any other transfers or in transit moves of said inmate that occurred in 1996. I have no personal knowledge of, or personal involvement in, the events that are the subject of . . . this lawsuit." (Goord 8/13/98 Aff. ¶ 3.)

Likewise, defendant correction officer Johnson personally attests: "I neither requested nor had any personal involvement in the decision to transfer plaintiff Joe Jackson from Fishkill Correctional Facility to Auburn Correctional Facility in 1996. Moreover, I neither requested nor was personally involved in any other of plaintiff Joe Jackson's prison transfers." (Johnson 8/17/98 Aff. ¶¶ 2–3.)

Fishkill Deputy Superintendent of Programs Ada Perez also submitted an affidavit attesting that Jackson's "transfer from Fishkill to Auburn was authorized and processed by Senior Correction Counselor Barbara Simmons, Correction Counselor Fedele Fiore and [Perez] . . . . Correction Officer Thomas Johnson had no personal involvement in the decision to transfer plaintiff Joe Jackson from Fishkill to Auburn." (Perez 8/13/98 Aff. ¶¶ 1, 3–4.)

Thus, defendants have now submitted the unequivocal evidence of their lack of personal involvement in the transfer that the Court previously found lacking. Jackson has presented no contrary evidence.[3] Defendants therefore should be granted summary judgment on this claim for the reasons stated in the Court's prior summary judgment opinions. *See Jackson v. Johnson,* 15 F.Supp.2d at 353, 365.

## II. *THE COURT SHOULD GRANT DEFENDANTS' SUMMARY JUDGMENT MOTION ON JACKSON'S DUE PROCESS CLAIM AGAINST DEFENDANTS PERSONALLY BECAUSE NEITHER DEFENDANT WAS PERSONALLY INVOLVED IN JACKSON'S TIER III HEARING*

Jackson sued defendants in both their official and personal capacities, seeking prospective injunctive relief as well as monetary damages. *See Jackson v. Johnson,* 15 F.Supp.2d 341, 343 (S.D.N.Y.1998).

■ It is well established that in order to be personally liable for an alleged due process violation, including in connection with a Tier III hearing, a defendant must have ei-

3. Jackson claims that he sent a letter to Goord requesting discretionary review: "As part of the many exhibits attached, this Court will find a *letter request of Discretionary* hands of 'Goord' subordinate[ ]s." (9/17/98 Jackson letter ¶ 1; *see also* 10/13/98 Jackson letter ¶ 2.) No such exhibits were attached to Jackson's letters. Donald Selsky, DOCS Director of Special Housing and Inmate Discipline, subsequently submitted the alleged letters, which are addressed to Selsky and a Robert Murphy, respectively, not Goord, and are dated April 10, 1998 and July 20, 1998, well after this suit was commenced and more than two years after Jackson's January 18, 1996 disciplinary hearing. (10/21/98 Selsky Aff. ¶¶ 1, 5 & Ex. A: 4/10/98 and 7/20/98 Jackson letters to Selsky and Murphy.) It is not clear whether Jackson claims that these letters show Goord's involvement with respect to his transfer or his appeal from the Tier III disciplinary hearing, but as to either, they are not a basis for denial of defendants' summary judgment motion. Even if Jackson sent Goord letters requesting an appeal—and as noted, there is no evidence he sent these or any other letters to defendant Goord—the relevant question is whether Goord acted on the letters, in other words, whether he was personal-

ly involved with Jackson's Tier III hearing appeal or Jackson's transfer, not whether he had notice. As discussed below in Part II, Goord submitted an affidavit stating he was not involved with Jackson's appeal or any other event relating to Jackson. Thus, even if the Court accepts that Goord had notice of some appeal by Jackson, Jackson's personal liability claim against Goord fails.

Jackson also asserts that Goord's policy denying prisoners good time if they refuse to participate in programs is unconstitutional:

"Goord" states that: "*if inmates refuse to meaningfully participate in assigned . . . programs, they face a loss of good time. It really is that simple."* . . . . plaintiff was denied parole because he did not have eligibility certificate for programming. Yet plaintiff was keeplocked against his will, and denied programming and all other privileges. Note the *AMBIGUITY,* and Unconstitutionality of D.O.C.S. regulations statutes, and policy.

(Jackson 9/17/98 letter ¶ 3.) The short answer to this is that Jackson's complaint does not raise any challenge to any policy of Goord, or DOCS, regarding loss of good time credit.

ther: " '(1) ... participated directly in the alleged constitutional violation, (2) ... after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) ... created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) [been] grossly negligent in supervising subordinates who committed the wrongful acts, or (5) ... exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.' " *Jackson v. Johnson,* 15 F.Supp.2d at 365 (Peck, M.J.) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995), & citing additional authority).

Jackson claims that his due process rights were violated in connection with his Tier III disciplinary hearing because he was denied adequate assistance and because his Tier III hearing officer was biased and admitted inadmissible evidence during the hearing. *See Jackson v. Johnson,* 15 F.Supp.2d at 350. (*See also* Jackson 8/21/97 Aff. at 2, 6–7.)[4]

█ The Tier III hearing transcript reveals that Jackson's hearing officer was Lieutenant Szymanowicz, who stated on the hearing record that he was designated to conduct the hearing by "Acting Superintendent Bazuka (phonetic)." (Cardinale Aff. Ex. A: Tier III Hearing Tr. at 2, 23, 41.) There is no evidence before the Court that either defendant Johnson or Goord was ever personally involved with the Tier III hearing or any appeal therefrom. Indeed, the record discloses that Jackson's administrative appeal was reviewed and denied by Donald Selsky, Director, Special Housing/Inmate Disciplinary Program. (Cplt. Ex. D: Review of Superintendent's Hr'g.) Moreover, defendant Goord stated in his affidavit that he had "no personal knowledge of, or personal involvement in, the events that are the subject of ... this lawsuit." (Goord 8/13/98 Aff. ¶ 3.)

In response to the Court's request that defendants submit additional evidence to make absolutely certain that defendants had no involvement in Jackson's Tier III hearing, defendants submitted the affidavit of Donald

Selsky, DOCS Director of Special Housing and Inmate Discipline. Based on his personal knowledge of Jackson's hearing and appeal and his review of DOCS records, Selsky stated:

4. Defendant Thomas Johnson, who was the Correction Officer who issued plaintiff the misbehavior report that led to the disciplinary hearing at issue, did not testify during the actual hearing. Instead, the misbehavior report issued by Johnson was entered into evidence at the hearing. *See* Ex. A; *see also* Hearing Transcript submitted with defendants' supplemental motion for summary judgment. As argued in defendants' supplemental motion for summary judgment (Def. Brief p. 12), a Correction officer who merely files a misbehavior report, such as defendant Johnson, cannot be held responsible for any constitutional defect that occurs at a subsequent disciplinary hearing.

5. After plaintiff was found guilty at the conclusion of his disciplinary hearing, he filed an internal appeal dated January 18, 1996 to the then Commissioner of DOCS, Philip Coombe, Jr. Ex. B. On behalf of former Commissioner Coombe, I affirmed plaintiff's disciplinary hearing on March 18, 1996. *Id.*

6. As explained in the affidavit of defendant DOCS' Commissioner Glen S. Goord, submitted with defendant's supplemental motion for summary judgment, Goord did not become Commissioner of DOCS until April 16, 1996, which was after plaintiff's appeal to the Commissioner's Office had been decided. Goord Aff. ¶ 6.

7. Thus, Commissioner Goord was not personally involved in plaintiff's appeal to the Commissioner's Office.

8. After plaintiff's internal appeal to the Commissioner's Office, by letter dated November 1, 1996, plaintiff requested a "discretionary review" of his disciplinary hearing, seeking both an expungement of the hearing and a transfer out of Auburn Correctional Facility. Both George Duncan, the First Deputy Superintendent of Auburn Correctional Facility, as well as

---

4. Jackson also alleges that his due process rights currently are being violated at Wende Correctional Facility. (*See* Jackson 9/6/98 Letter and attachments.) As the Court has repeatedly ad-

vised Jackson, those claims are not before this Court. *See Jackson v. Johnson,* 15 F.Supp.2d at 344; *see also Jackson v. Johnson,* 97 Civ. 1592, 1997 WL 397626 (S.D.N.Y. June 16, 1997).

myself, denied plaintiff's November 1, 1996 application.

(Selsky 9/16/98 Aff. ¶¶ 4–8; *see also* Selsky 9/16/98 Aff. Exs. A–B.) Thus, the record is uncontradicted that defendants Johnson and Goord had no personal involvement in Jackson's Tier III hearing or the appeals therefrom.

Jackson argues that if Johnson had not issued the allegedly false misbehavior report, there would not have been a hearing and thus his rights would not have been violated. This "but for causation" argument, however, is not the standard for Section 1983 liability. *See, e.g., Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (prisoner's but for argument as to guard who prepared misbehavior report but was not involved in Tier III hearing rejected; "The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."). A defendant personally must · have been involved in the allegedly unconstitutional action—here, the Tier III hearing— in order to be liable under Section 1983. Since defendants Johnson and Goord were not personally involved in the Tier III hearing, and Jackson did not sue the hearing officer, defendants' summary judgment motion on Jackson's due process claim against defendants in their personal capacity should be granted on this basis.

## III. *THE COURT SHOULD GRANT DEFENDANT'S SUMMARY JUDGMENT MOTION ON JACKSON'S DUE PROCESS CLAIM SEEKING INJUNCTIVE RELIEF BECAUSE HE WAIVED HIS RIGHT TO EFFECTIVE ASSISTANCE BY FAILING TO ASSERT ANY DEFICIENCIES DURING HIS PRISON DISCIPLINARY HEARING, DESPITE NUMEROUS OPPORTUNITIES TO DO SO*

### A. *The Eleventh Amendment Bars Plaintiff From Seeking Monetary Damages Against Defendants in Their Official Capacities, But Does Not Bar Prospective Injunctive Relief*

■ It is black letter law that a suit against a state official in his official capacity seeking damages is barred by the Eleventh Amendment absent the State's waiver or consent, neither of which was given here. *See, e.g., Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Dube v. State Univ. of New York,* 900 F.2d 587, 594–95 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991); *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.), *cert. denied,* 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Holton v. Fraitellone,* 96 Civ. 1312, 1997 WL 328066 at *3 (S.D.N.Y. June 16, 1997) (Sotomayor, D.J.) ("A claim against an employee of the New York State Department of Corrections for actions taken in his or her official capacity is, in effect, a suit against the State. Absent the State's waiver or consent, neither of which have been· given here, the Eleventh Amendment bars from federal court all section 1983 suits for legal ... relief brought by citizens against the State and its agencies.... Thus, plaintiff's claim for monetary damages from defendants in their official capacities is barred under the Eleventh Amendment."); *Lora v. Greifinger,* 96 Civ. 0628, 1997 WL 102473 at *3 (S.D.N.Y. Feb. 27, 1997); *Thomas v. Held,* 941 F.Supp. 444, 447 n. 1 (S.D.N.Y.1996) (Kaplan, D.J.); *Brown v. Coughlin,* 869 F.Supp. 196, 200 n. 10 (S.D.N.Y.1994) (Kaplan, D.J.). Plaintiffs' claims for damages from defendants in their official capacities is therefore barred under the Eleventh Amendment.

■ On the other hand, a suit against a state official in his official capacity based on federal law and seeking prospective injunctive relief is not barred by the Eleventh Amendment. *See, e.g., Dube v. State Univ. of New York,* 900 F.2d at 595; *Russell v. Dunston,* 896 F.2d at 667–68; *Dwyer v. Regan,* 777 F.2d 825, 835–36 (2d Cir.1985); *Lora v. Greifinger,* 1997 WL 102473 at *3; *Thomas v. Held,* 941 F.Supp. at 447.

■ Thus, Jackson's federal claim against defendants in their official capacity for an injunction requiring "reversal of [Jackson's]

disciplinary hearing decision[ ] and expunging [it] from [his prison] record[ ]" (Cplt. at p. 12) is not barred by the Eleventh Amendment.

### B. *Jackson Waived His Right to Effective Assistance By Failing to Raise Any Deficiencies During His Prison Disciplinary Hearing, Despite Numerous Opportunities To Do So*

It is settled law that a criminal defendant can waive due process rights to counsel: "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201, 115 S.Ct. 797, 801, 130 L.Ed.2d 697 (1995) (citing, *inter alia, Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), for the proposition that "Sixth Amendment right to counsel may be waived.").

Unlike a criminal defendant, a prisoner is not entitled to counsel at a prison disciplinary or similar hearing, but in limited circumstances is entitled to the assistance of a staff member or a fellow inmate. *See, e.g., Ayers v. Ryan*, 152 F.3d 77, 80–81 (2d Cir. 1998); *Jackson v. Johnson*, 15 F.Supp.2d 341, 351 (S.D.N.Y.1998) ("*Wolff* requires, among other things, the assistance of at least a staff member or fellow inmate where the prisoner is illiterate or the issues involved complex."). An assistant's role is to act as "merely a surrogate for the inmate, not a legal adviser or advocate." *Dawes v. Carpenter*, 899 F.Supp. 892, 896 (N.D.N.Y.1995) (Kaplan, D.J.); *see also, e.g., Hailey v. Provost*, No. 94–CV–1616, 1997 WL 627547 at *2 (N.D.N.Y. Oct. 9, 1997) (Pooler, D.J.) (an assistant's role is to "perform tasks like interviewing witnesses that the inmate would perform himself if he were in the general population") (citing *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir.1988)).

The courts in this circuit have established that an inmate's silence can constitute waiver of his right to assistance. *See, e.g., Murray v. Dixon*, 107 F.3d 3 (table), 1997 WL 73152 at *2 (2d Cir.1997) (unpublished opinion) (affirming hearing officer's determination that inmate waived his right to assistance because the inmate "admits that he refused to sign the required request for employee assistance presented to him when he was served with the misbehavior report, and he does not allege that he requested assistance between his refusal and the hearing"); *Hailey v. Provost*, 1997 WL 627547 at *2 & n. 3 (inmate waived right to effective employee assistance by "specifically answer[ing] '[n]o sir' after [the hearing officer] said 'if there's nothing else that you want in terms of assistance' "); *Dawes v. Carpenter*, 899 F.Supp. at 896 ("there is no duty to provide assistance to an inmate who does not want it"; inmate who refused to select an assistant waived his right to effective assistance).[5]

At the commencement of Jackson's Tier III hearing, the hearing officer asked Jackson about the adequacy of his assistant; Jackson was not merely silent about the effectiveness of his assistant, he positively affirmed that he had adequate assistance:

> HEARING OFFICER: ... The record indicates you chose an assistan[t]. *The record indicates that you have requested the assistance and it was provided by Sergeant Padilla, is that correct?*
>
> INMATE JACKSON: *Yes.*

---

5. *Cf. Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir.1996) ("Federal and state courts in this circuit have recognized that an inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing."); *Charles v. Coughlin*, 985 F.Supp. 88, 93–94 (E.D.N.Y.1997) (same); *Kingwood v. Coombe*, 96 Civ. 0432, 1997 WL 323913 at *7 (S.D.N.Y. June 13, 1997) (prisoner's acknowledgment at his disciplinary hearing that one witness would suffice waived his right to call other witnesses); *Chapple v. Keane*, 903 F.Supp. 583, 585 (S.D.N.Y. 1995) (plaintiff who did not request any witness at prison disciplinary hearing cannot complain that hearing officer's failure to call a witness deprived him of due process); *Nurse v. Duffany*, 89 Civ. 4373, 1991 WL 24321 at *8 (S.D.N.Y. Feb. 12, 1991); *Salahuddin v. Harris*, 82 Civ. 8527, 1986 WL 9791 at *2 (S.D.N.Y. Aug. 29, 1986); *Salahuddin v. Harris*, 83 Civ. 1782, 1985 WL 478 at *1–2 (S.D.N.Y. April 8, 1985); *Majid v. Henderson*, 533 F.Supp. 1257, 1273 (N.D.N.Y.), aff'd mem., 714 F.2d 115 (2d Cir.1982); *Wolfe v. Carlson*, 583 F.Supp. 977, 982–83 (S.D.N.Y.1984) ("Plaintiff cannot turn his own lack of diligence [in requesting a witness's testimony] into a constitutional deprivation.").

HEARING OFFICER: *The assistant has met you, interviewed you and the individuals you wished to be interviewed, and reported back to you, is that correct?*

INMATE JACKSON: *Yes.*

(Cardinale 8/18/98 Aff. Ex. A: Tier III Hearing Tr. at 3, emphasis added.)

Jackson passed up a second chance to protest against the assistant when, after Jackson's own hearing testimony, during which Jackson mentioned a witness that he wanted called, the hearing officer asked Jackson if there was anything else he wanted to raise:

HEARING OFFICER: Okay. *Anything else, Mr. Jackson?*

INMATE JACKSON: *No, sir.*

HEARING OFFICER: Okay. So what we're missing is an officer's testimony from Mr.——

INMATE JACKSON: Marshall.

HEARING OFFICER:—— Mr. Marshall.

(*Id.* at 19–20, emphasis added; *see also id.* at 20–22, 31–32.)

Finally, after all of the evidence was in, the hearing officer *again* asked Jackson if there were any other issues he wanted to raise and for the third time Jackson made no mention of his alleged ineffective assistant:

HEARING OFFICER: Okay. *Mr. Jackson, where else would you like to go with this?* We've called your witness. Do you want other witnesses?

INMATE JACKSON: Well, I——

HEARING OFFICER: Originally you said you wanted no witnesses.

INMATE JACKSON: Other than the doctor.

HEARING OFFICER: Then you called Mr. Marshall. You mentioned the doctor, but then you changed your mind.... So what else [do] you want?

INMATE JACKSON: That's—— that's——

HEARING OFFICER: Do you want inmates?

INMATE JACKSON: No, I'm not going to (inaudible).

HEARING OFFICER: All right. So we got Mr. Marshall. *Is there anything else you'd like to say? ...*

(*Id.* at 37–39, emphasis added.) The tape then ran out and when it was restarted, the hearing officer continued:

HEARING OFFICER: Okay.... When the tape ran out, Mr. Jackson requested that I go to Housing Unit N and look inside a cube. Is that correct, Mr. Jackson?

INMATE JACKSON: Yes, sir.

(*Id.* at 39–40.) The hearing officer did so. (*Id.* at 40.)

Only after the hearing officer found Jackson guilty did Jackson, for the first time, complain about his assistant:

HEARING OFFICER: ... The punishment for a weapon found in your possession will be 99 days SHU time; 99 days loss of packages, phone, and commissary. At this time, do you understand your punishment?

INMATE JACKSON: Yes, sir, but I have to say I object to the entire proceeding.

HEARING OFFICER: To the entire proceeding?

INMATE JACKSON: Yes, because I'm being wrongly accused for simply trying to get help, and to get out of harm's way, and to avoid being injured by another inmate. *And I also would like to state that my rights were violated under Directive 4932, Subpart 251, Subpart 254.4 and Subpart 255.*

HEARING OFFICER: What is it?

INMATE JACKSON: Well, first of all, 251 deals with the assistant. The assistant that was assigned to me was Sergeant Padilla, and when he came to see me on January 10th, maybe five hours after I got the ticket, his first statement was derogatory in that he stated, "Why the fuck did you pick (inaudible), why the fuck did you pick me, I'm not going to help you." I then gave him one——

HEARING OFFICER: *Excuse me, did you bring this up in the hearing?*

INMATE JACKSON: *I don't know.*

HEARING OFFICER: *Well, I don't remember you stating— telling me that Sergeant— okay.*[6] Then you had a problem with your assistance [sic].

If you desire to challenge my disposition in this matter, you must file an appeal form which is available to you on your Housing Unit. I left one on the table, you have already take it, correct?

INMATE JACKSON: Yes, sir.

. . . .

HEARING OFFICER: . . . You had a problem with Sergeant Padilla.

INMATE JACKSON: Right, he didn't act in—the way procedures require in that he was derogatory and suggested that I should plead guilty; if not, the penalty is going to be very hard. And he was telling me that I'm guilty when, in fact, I'm not. And he said he wasn't going to assist me, the only thing he did give me was that letter that I would like to have back to Lieutenant Patero. He gave me a copy of that, but the other information, and things like that, I did need [him] to assist me in my defense was on another piece of paper that he never came back for on June— January the 11th when he should have came back. He sent Lieutenant Hewell, who tried to coerce me into pleading guilty, and then suggested that I sign the paper that was for the assistant to return to me, and I was only to sign when he had completed his assignment as prescribed by Directive 4932.

(*Id.* at 44–47, emphasis added.)

Jackson's after-the-fact complaints of the assistant's alleged violations, which he readily invoked citing the precise Directives allegedly violated as soon as the hearing officer decided against him, appear to be nothing more than an attempt to establish grounds for appeal. The law is clear that by initially affirming that the assistance he received was adequate, and repeatedly failing to object to lack of assistance during the disciplinary hearing, despite numerous chances to do so, Jackson waived his right to effective assis-

tance. *See* cases cited at pages 11–12 above. Accordingly, the Court should grant defendants' summary judgment motion on Jackson's claim for injunctive relief.[7]

### CONCLUSION

For the reasons set forth above, the Court recommends that defendants' supplemental summary judgment motion be granted and judgment entered for defendants.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

November 6, 1998.

---

**6.** Of course, the disciplinary hearing record shows that Jackson did not raise his ineffective assistance claim during the hearing.

**7.** Jackson's request to amend to name Selsky as a defendant is also denied as both untimely and

futile. The Court sees no need to discuss any other issues contained in the numerous letters that Jackson has sent to the Court while this motion was under submission.