Stanley B. THOMAS, Plaintiff,

v.

Laura HELD, as Administrator of the Assigned Counsel Plan for the Appellate Division of the State of New York, First Department, The Departmental Screening Committee Of the Criminal Courts Panel Of the Assigned Counsel Plan, and Marvin Raskin, as Chair of the Departmental Screening Committee of the Criminal Courts Panel of the Assigned Counsel Plan, Defendants.

No. 96 Civ. 5968 (LAK).

United States District Court, S.D. New York.

Oct. 23, 1996.

Frederick Seligman, Delice Seligman, Kingston, NY, for Plaintiff.

Rebecca Ann Durden, Assistant Attorney General, New York City, Dennis C. Vacco, Attorney General of New York, Albany, NY, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action alleges that plaintiff wrongfully was denied recertification to the Assigned Counsel Plan's Criminal Courts Panel, commonly referred to as the 18B Panel. Plaintiff contends that the Screening Committee refused to recertify him to the 18B Panel solely due to his age and seeks redress under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment of the United States Constitution, the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq.*, and the New York Human Rights Law, N.Y.EXEC.L. § 296(1)(a) (McKinney 1994). Plaintiff moves for a preliminary injunction requiring his reinstatement *pendente lite.* Defendants move to dismiss the complaint under FED.R.CIV.P. 12(b)(6).

### Facts

Plaintiff is a seventy-eight year old attorney who has been a member of the 18B Panel for the past twenty-five years. Membership on the 18B Panel allowed plaintiff to represent indigent defendants in criminal proceedings in the state courts and to be compensated by the state for his work.

On or about March 29, 1994, plaintiff completed and returned an application for recertification to the panel. Plaintiff never had been asked to apply for recertification before. On or about October 4, 1995, he was informed that his application had been denied. No rationale for the denial was advanced in the letter informing plaintiff of the Screening Committee's decision, and the Committee refused to disclose its reasoning, or plaintiff's file, upon later request of plaintiff's counsel. Plaintiff states that his "knowledge of the law, legal judgement, ability to prepare cases, vigor of advocacy, punctuality, candor with the court, or courtesy, had rarely if ever, been questioned." (Cpt. ¶ 21) He has submitted letters from a number of state court judges attesting to his character and competence.

Plaintiff alleges that defendants "embarked upon a course of conduct, with discriminatory intent, to 'recertify' its panel plan members by directing only those mem-

bers of the panel who had the most seniority to apply for recertification," thereby weeding out all older panel members. (Cpt. ¶ 5A) In November 1995, he filed age discrimination complaints with the New York State Division of Human Rights and the federal Equal Employment Opportunity Commission ("EEOC"), both of which were dismissed for lack of jurisdiction. Plaintiff then commenced this action after obtaining a "right to sue" letter from the EEOC.

## Discussion

As defendants' motion to dismiss is potentially dispositive, the Court considers it at the outset.

### Eleventh Amendment

■ Defendants argue that plaintiff fails to state a valid claim because "[t]he Eleventh Amendment to the United States Constitution bars suit against the State of New York in federal court, regardless of the relief sought." (Def. Mem. at 3) While the Eleventh Amendment bars suits against a state in federal court, it is well established that a federal court, in certain circumstances, may entertain an action by an individual for prospective injunctive relief against state officials. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "[A] suit challenging the constitutionality of a state official's action is not one against the state." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984).

■ Plaintiff's claim is excepted from the Eleventh Amendment under Pennhurst. An injunction ordering the heads of a govern-

ment agency to reinstate a privilege enjoyed by a plaintiff is the sort of prospective injunctive relief that is not prohibited by the Eleventh Amendment. Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986). The court in Dwyer held that "reinstatement is purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll." Dwyer, 777 F.2d at 836; accord, Russell v. Dunston, 896 F.2d 664, 668 (2d Cir.1990), cert. denied, 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990) (quoting Dwyer and citing Edelman ).[1] Thus, insofar as plaintiff's claim seeks to order defendants to reinstate him, it is not barred by the Eleventh Amendment.[2]

### Procedural Due Process

■ Plaintiff claims that the defendants deprived him of his liberty and property without due process of law, in contravention of the Fourteenth Amendment. In order to prevail on his due process claim, plaintiff must show that he had a constitutionally protected liberty or property interest and that his protected interest was violated by the defendants' actions. Though plaintiff undoubtedly has a great personal interest in continued certification to the 18B Panel, it is not the magnitude but the type of interest that controls the determination of a due process claim. There is a well developed body of case law on what constitutes a protected interest, and evaluation of plaintiff's claimed interest under these standards shows that his allegations are inadequate.

### Property Interest

■ The complaint argues that "[p]laintiff's appointment for an indefinite term sub-

1. It is unclear from plaintiff's papers whether he means to bring this suit against the Committee itself or the constituent members of the Committee. The caption names "The Departmental Screening Committee of the Criminal Courts Panel of the Assigned Counsel Plan," which implies that he is suing the Committee itself. However, in his Reply Memorandum, he states that he is suing the members of the Screening Committee whose identities are unknown to him at this time. (Reply Mem. at 3) Plaintiff can not maintain a suit against the Committee itself, but only its members acting in their official capacities. "It is clear, of course, that in the absence of

consent a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hospital v. Halderman, 465 U.S. at 100, 104 S.Ct. at 908. As the complaint is dismissed, this issue is not material.

2. Since defendants succeed on their motion to dismiss as to all causes of action, the Court does not consider the effect of the Eleventh Amendment on plaintiff's claims for money damages and declaratory relief.

ject to recertification ... is a 'property interest.'" (Cpt ¶ 34) Property interests:

. "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

An individual's expectation of employment is insufficient to support a due process claim; state law must create an entitlement to employment. New York law therefore determines if plaintiff had only "an unprotected unilateral expectation of employment, or instead a constitutionally-protected 'legitimate claim of entitlement.'" *Donato v. Plainview–Old Bethpage Central School District*, 96 F.3d 623, 629 (2d Cir.1996) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, and citing *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 29–30 (2d Cir.1994)).

■ Plaintiff's claim of a property interest in his appointment to the 18B Panel is based on Section 612.2 of the New York Code of Rules and Regulations ("NYCRR"), which provides that "an appointment of an attorney to any of the indigent defendants' legal panels shall be for an indefinite term subject to recertification."[3] (Cpt ¶ 33) The term "indefinite" does not establish an entitlement to

the appointment it describes. In fact, the rule specifically makes the appointment "subject to recertification." It contains no terms mandating that a refusal to certify a panel attorney be for good cause. Instead, it puts a panel member on notice that his or her appointment could end at any time. While plaintiff presumably had an expectation to continuation as a panel member, Section 612.2 did not give him a protected right to that appointment.[4]

*Roth* is the leading case on whether an expectation of continuing employment rises to the level of a constitutionally protected property interest. The plaintiff there was an assistant professor working under a one-year contract. He alleged that most teachers hired by the defendants on a year-to-year basis were rehired. The Court nevertheless held that the plaintiff's one-year contract did not create a property interest that was protected by the Fourteenth Amendment.[5] State law is explicit in this case: It grants panel members appointments only for an indefinite time subject to recertification. This Court therefore concludes that:

"the terms of the [plaintiff's] appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment." *Roth*, 408 U.S. at 578, 92 S.Ct. at 2710.

---

3. This wording appears in the 1996 McKinney's Rules of Court and in Westlaw's McKinney's file and was adopted by an order of the Appellate Division, First Department, on April 11, 1994. The version of the rule contained in the current NYCRR and the Westlaw NYCRR file erroneously fails to reflect the 1994 order, which is controlling. The Court notes that the previous version of the rule that still appears in 22 N.Y.C.R.R. § 612.2 (1996), was in effect for most of plaintiff's period of association with defendants and so arguably could control the parties understanding of their relationship. This point is immaterial, however, because plaintiff cannot prevail under either version.

4. Plaintiff's claim that his financial dependence upon, and long years of service to, the committee establish a property right are without legal merit. Construing New York law, the *Donato* court held that neither "financial need or the longevity of ... service give ... an interest in continuing employment" absent a tenure-type security of employment. *Donato*, at 630.

5. Though counsel failed to cite the case, plaintiff might argue that, like the plaintiff in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), he can establish "an unwritten 'common law'" entitlement in his appointment arising from an implied agreement between himself and the state. However, plaintiff's case differs from *Perry* in significant ways. *Perry* did not find that the plaintiff had an implied right in his job as a professor. Rather, it recognized that the plaintiff in that case might be able to prove such an entitlement based on representations that the defendant had made regarding tenure at the college. The defendants in the present action are not alleged to have made any statements regarding plaintiff's continuation on the panel. Attorneys who represent indigent defendants enjoy no traditional security of employment, and plaintiff does not allege any facts that reasonably can be construed to establish an implied property interest in his appointment to the 18B Panel.

■ The decision in *Donato* confirms the inadequacies of plaintiff's claim. In *Donato,* a probationary educational administrator alleged violations of her right to due process arising from a firing in which certain derogatory statements about her performance allegedly were made by state officials. The Second Circuit upheld dismissal of her claim, reasoning that, as a probationary employee, she had no right to continuing employment. The Court stated that "the law expressly permitted her termination at any time during the probationary period," much as plaintiff's appointment was made "subject to recertification." *Donato,* at 629–30. What *Roth* and *Donato* make clear is that no protected property interest is created absent a distinct grant of security under state law. Plaintiff has made no showing that he has any such right under New York law.

This view is supported also by *Schwartz v. Mayor's Committee on the Judiciary,* 816 F.2d 54, 57 (2d Cir.1987). In rejecting a claim that the defendant had violated the plaintiff's due process rights in declining to recommend the reappointment of a sitting judge, the *Schwartz* court held that the judge had no property right in reappointment:

> "the fact that many, or even most, incumbent judges have been reappointed cannot operate to raise appellant's 'subjective expectation' to a constitutionally protected right, especially when doing so would contradict the relevant statutes and rules." *Schwartz,* 816 F.2d at 57.

Similarly, the fact that plaintiff was reappointed for a number of years and was certified to the board for an "indefinite" term does not elevate his expectation to the level of an entitlement.[6]

It is worth noting also that the state courts have rejected a claim virtually identical to this one. In *Bryer v. Family Court Panel Plan,* 205 A.D.2d 406, 613 N.Y.S.2d 609 (1st Dep't 1994), the First Department rejected a claim that the denial, without a hearing, of recertification to a panel of family court lawyers, violated the due process rights of the former panel member. *Bryer,* 205 A.D.2d at 406, 613 N.Y.S.2d at 610 (citing *Roth* ). As the regulation governing panel membership was not materially different from that at issue here, the decision reflects a conclusion by New York's intermediate appellate court that New York law does not create a property interest in continued membership on such panels.[7]

*Liberty Interest*

■ Plaintiff alleges that:

> "[d]efendants have violated a protected Fourteenth Amendment 'liberty' interest of plaintiff. In declining to recertify plaintiff, defendants have imposed a stigma and a disability which forecloses plaintiff's freedom to take advantage of other public employment opportunities in the criminal law filed." (Cpt. ¶ 28)

The termination of a state employee may violate the employee's liberty interest because "due process guarantees the employee an opportunity to defend [the employee's] 'good name, reputation, honor or integrity.' " *Donato,* at 630 (quoting *Roth,* 408 U.S. at

6. In an attempt to ground his property interest claim, plaintiff argues that he had a contractual right to his appointment by operation of promissory estoppel. However, promissory estoppel requires that the person to be bound make a promise which reasonably induces reliance. None of the defendants in this action are alleged to have made any statement to plaintiff regarding the security of his appointment, so the only statement that could have been relied upon would have been that made in Section 612.2. For the reasons expressed in the text, the wording of the regulation does not support a claim of a property interest by operation of promissory estoppel.

Plaintiff makes a number of other arguments based on New York contract law in his attempt to create a property interest. Plaintiff cites no authority in support of his claims, and in view of the fact that this Court finds the only alleged statement regarding the term of plaintiff's appointment (Section 612.2) insufficient to create a property interest, these arguments fail. Any contract claim by the plaintiff would have to be based on a promise, and the only source of that promise is insufficient to create a property interest in plaintiff's appointment to the 18B Panel.

7. As the court did not explain its reasoning in detail, it did not specifically write that state law created no property interest. Nevertheless, as it seems quite unlikely that the Appellate Division thought that no hearing of any kind would have been required if the plaintiff had a property interest, this seems the only reasonable interpretation of the decision.

573, 92 S.Ct. at 2707). However, a finding of a violation of an employee's liberty interest is appropriate only if the terminating agency's officials made derogatory statements about the terminated employee without affording the employee a hearing at which to rebut those charges. *Wisconsin v. Constantineau,* 400 U.S. 433, 436, 91 S.Ct. 507, 509–10, 27 L.Ed.2d 515 (1971); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 446 (2d Cir.1980). The statements made about the employee, moreover, must be so damaging to his or her professional reputation that they would hinder seriously the employee from finding work in that field, thereby violating the employee's liberty interest in pursuing the occupation of his choosing. *See Huntley v. Community School Board,* 543 F.2d 979 (2d Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977). And of course, no stigma can attach or damage be incurred unless the statements are publicized. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (upholding dismissal of a liberty interest when there is no public disclosure); *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) (stigmatizing statements must be publicly disclosed). "Without publication, the Supreme Court has stated that an individual's liberty claim is 'doomed.'" *Schwartz,* 816 F.2d at 57 (quoting *Loudermill,* 470 U.S. at 547 n. 13, 105 S.Ct. at 1496 n. 13).

▬▬ While judges may disagree on how serious stigmatizing statements must be in order to implicate a liberty interest, *compare Donato,* at 630–33, *with id.,* at 634–35 (Altimari, J., dissenting), all authorities agree that *some statement* must be made and publicly disclosed by the terminating authorities in order to violate an employee's liberty interest. Defendants here refused to make any public disclosure of their reasoning and so can not be seen to meet the standards of *Bishop* and *Loudermill.* Plaintiff's argument that he was stigmatized by defendants' refusal to recertify him does not state a claim of a violation of his liberty interest. "[A]s understood by the Fourteenth Amendment, a

decision not to reemploy, standing alone, does not deprive an employee of liberty." *Donato,* at 630 (citing *Roth,* 408 U.S. at 575, 92 S.Ct. at 2708).

### ADEA Claim

▬▬ Plaintiff claims that defendants' decision not to recertify him ran afoul of the ADEA. ADEA, however, protects only employees, not independent contractors. *Frankel v. Bally,* 987 F.2d 86, 89 (2d Cir. 1993); *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793, 796 (2d Cir. 1986). Defendants correctly argue that plaintiff's relationship with them was that of an independent contractor and not an employee, precluding plaintiff from recovering under the ADEA.

▬▬ Though the meaning of "employee" is crucial to the scope of the application of the statute, the definition of the term provided by ADEA is unenlightening.[8] The Second Circuit has held that the proper analysis is the test for agency under the common law. *Frankel,* 987 F.2d at 90. The inquiry focuses primarily on the right of the hiring party to control the "manner and means" through which the work is carried out. *Id.; see also Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 509 (2d Cir.1994) (finding that salesman was not employee of government agency where it had no control over manner and means through which work was accomplished). The other factors in the test are:

> "the skill required; the source of the instrumentality and tools; the location of the work; the duration of the relationship; whether the hiring party has the right to assign additional projects to the hiring party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treat-

---

**8.** The ADEA defines an employee as "an individual employed by an employer." 29 U.S.C. § 630(f).

ment of the hired party." *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989) (citing Restatement (Second) of Agency § 220(2) (1958)) (footnotes omitted).

On this motion to dismiss, the Court examines plaintiff's claims under the standard of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and will dismiss the complaint only if, after construing all of the well-pleaded allegations in the favor of plaintiff, it is clear that he could prove no set of facts that would entitle him to relief.

The complaint in this case does not even allege that plaintiff was an employee of the defendants. Rather, it states that:

> "[t]he relationship between plaintiff and defendants is of a quasi-employment nature wherein defendants having certified and licensed plaintiff to the Plan, now seek to terminate such certification and license." (Cpt. ¶ 67)

Taking the allegations in the light most favorable to the plaintiff, it is readily apparent that he was fully in control of the means and manner through which his work was accomplished. There simply is no suggestion that the defendants ever attempted to exercise any control over the way that he represented his clients in or out of court.

Plaintiff, moreover, has failed to allege enough to prevail on any but one of the other factors of the common law agency test. Plaintiff himself argues that his work took considerable skill, which suggests strongly that he was an independent contractor. The complaint states that he reported to work every day to a room in the courthouse owned by the Criminal Bar Association, not the committee's office. Plaintiff does not allege that he was compelled to take any case by the Committee, and presumably he could have chosen to represent private litigants with his time. Though the parties did have a long working relationship, the "hiring" party was not "in business," and no allegations are made that the Committee even paid the plaintiff, let alone provided him with benefits. Plaintiff makes no allegations whatever as to any other factor that could establish that he was an employee of the defendants.[9] Every factor in the analysis (except the length of the relationship), including the most important—the party in control of the means and manner through which the work was accomplished—logically can be interpreted in no other way than against the plaintiff, even while drawing all permissible inferences in his favor.[10]

Accordingly, this Court holds that plaintiff has failed to allege facts from which it may be concluded that he was an employee protected by the ADEA, and that his complaint therefore fails to state a claim under the statute.[11]

*Conclusion*

Plaintiff very well may have been harmed by the defendants, but his claim is brought in the wrong court. At root, he complains that the defendants acted arbitrarily in denying his application for recertification. Although his complaint does not state a federal cause of action, there may well be remedies open to him in the courts of New York. In an Article 78 proceeding, plaintiff could have sought a remedy for the allegedly arbitrary and capricious actions of a state official. N.Y.CIV. PRAC.L. & R. § 7803(3) (McKinney 1994);

9. Plaintiff's economic dependence on the hiring party may be taken into account in determining whether he is an employee, though this is not a factor in the common law agency test. *Frankel,* 987 F.2d at 90. Given his assertion that he is very dependant on the panel for income, this consideration weighs in favor of a finding that plaintiff is an employee. Even considering this issue, however, plaintiff has pled only two minor factors in the analysis, which when considered in the light of all the factors that indisputably cut against him, are not sufficient to prevent the conclusion that he was an employee of the Committee.

10. Even if the complaint were sufficient to avoid dismissal on this issue, this Court would deny the motion for a preliminary injunction. Plaintiff has not established a likelihood of success on the merits, or even the existence of substantial questions for litigation on this issue.

11. Though it is not determinative, the Court notes that the EEOC found that it had no jurisdiction over plaintiff's claim of age discrimination because it concluded that plaintiff was an independent contractor and not an employee.

452

*Pell v. Board of Education,* 34 N.Y.2d 222, 230, 356 N.Y.S.2d 833, 839, 313 N.E.2d 321, 325 (1974). This Court, however, lacks subject matter jurisdiction to consider such a claim.

The motion to dismiss is granted as to the federal claims for failure to state a claim and as to the state claims for lack of jurisdiction. *See* 28 U.S.C. § 1367. The motion for a preliminary injunction is denied as moot.

SO ORDERED.