**EMPIRE TRANSIT MIX,**
**INC., Plaintiff,**

v.

**Rudolph W. GIULIANI, Mayor of the City of New York; Henry J. Stern, Commissioner, Department of Parks & Recreation; Luis M. Tormenta, Commissioner, Department of Design & Construction; and the City of New York, Defendants.**

**No. 99 CIV. 2348 DB.**

United States District Court,
S.D. New York.

April 9, 1999.

Robert G. Benisch, Berman, Paley, Goldstein & Kannrey, LLP, New York, NY, for Plaintiff.

John Woods, Assistant Corporation Counsel, Michael D. Hess, Corporation Counsel of the City of New York, Jeffrey K. Goldsmith, Department of Parks & Recreation, Flushing, NY, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Empire Transit Mix, Inc. ("Empire") brings this action for an injunction compelling the City of New York (the "City") to revoke its prohibition on allowing plaintiff to supply concrete to contractors working on City construction projects. The matter is before the Court on Empire's motion for

a preliminary injunction and the defendants' motion to dismiss.

## Facts

Empire is a New York corporation in the business of supplying transit-mix concrete to construction projects.[1] Approximately forty percent of its gross sales comes from contractors working under contract with the City on various City projects.[2] Of special pertinence to the present dispute are several City construction projects for the City's Departments of Parks & Recreation (the "DPR") and Design & Construction (the "DDC").[3]

On or about October 3, 1997, Empire entered into an arrangement with Excel Group, Inc. ("Excel"), a subcontractor[4] on the DPR's Foley Square reconstruction project, to supply transit-mix concrete for installation. On January 20, 1999, it entered into an arrangement with Cobar Industries, Inc., also a subcontractor, to do the same on the DPR's City Hall Park project.[5] Empire alleges also that at the end of March it was supplying concrete to contractors on three DDC projects—a Fire Department building,[6] the reconstruction of McGuiness Boulevard,[7] and the construction of sanitary sewers on Parsons Boulevard.[8]

Defendants allege that some time in March 1999, the City obtained "significant negative information" concerning Empire[9] through its Vendor Information Exchange System database ("VENDEX").[10] This information appears to have been the subject of an article that was being prepared by the *New York Times* regarding Empire's alleged affiliation with the Laquila Construction Company, a firm with a somewhat checkered past.[11]

Plaintiff claims that on or about March 19, 1999 the DPR directed the prime contractor on the City Hall Park project to stop using Empire concrete and to submit two new concrete suppliers for DPR approval.[12] Three days later, the DPR allegedly gave the same message to the prime contractor on the Foley Square project.[13] At a March 23 meeting, the DPR informed Empire that the Mayor's Office had directed that Empire be removed as a concrete supplier on the City Hall and Foley Square projects because of the above mentioned *New York Times* article which appeared that day.[14]

On March 24, Empire was notified by the DDC that it no longer would permit Empire concrete on its construction projects.[15] It allegedly directed the prime

---

**1.** Cpt. ¶ 1.

**2.** *Id.* ¶¶ 7–8.

**3.** *Id.* ¶¶ 9, 16.

**4.** It is unclear from the complaint whether Excel was a subcontractor or the prime contractor on the Foley Square project. *Compare* Cpt. ¶ 11 *with* Cpt. ¶ 14.

**5.** Cpt. ¶¶ 10–11.

**6.** *Id.* ¶ 17.

**7.** DDC Contract No. HWK 666W. Cpt. ¶ 18.

**8.** DDC Contract No. SEQ–002454. *Id.*

**9.** Def. Mem. 2.

**10.** *Id.* This system is a computer database of information concerning vendors doing business with the City. *See generally Hellenic*

*American Neighborhood Action Committee v. City of New York,* 101 F.3d 877, 878 (2d Cir.1996).

**11.** Selwyn Raab, *Cement Company Banned From City Hall Park Renovation,* N.Y. TIMES, Mar. 23, 1999, at B4. Although the article reports the City administration's banning of Empire from the City Hall Park project, plaintiff argues that it was the reporter's questioning prior to March 19 which prompted the City's actions. *See* Tr., Mar. 30, 1999, at 6.

**12.** Cpt. ¶ 13.

**13.** *Id.* ¶ 14.

**14.** *Id.* ¶ 15.

**15.** *Id.* ¶ 17.

contractors on its contracts to cease using Empire as a supplier shortly thereafter.[16]

On March 30, Empire sought a temporary restraining order from this Court enjoining the City from continuing the ban on Empire's participation in City projects, claiming that defendants' *de facto* debarment of Empire from supplying concrete on those projects without a pre-deprivation hearing violated its rights to due process and equal protection of the laws.[17] This Court denied a temporary restraining order and scheduled a hearing on the motion for a preliminary injunction for April 7.

### Discussion

#### The Preliminary Injunction Standard

■■■ "In order to justify the award of a preliminary injunction, the moving party must first demonstrate that it is likely to suffer irreparable harm in the absence of the requested relief." [18] The threat of irreparable injury must be imminent or certain, not a matter of speculation.[19] Once the likelihood of irreparable harm has been demonstrated, a movant ordinarily is entitled to relief if it demonstrates "either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor." [20] Where, however, a movant seeks to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme," it may succeed only by demonstrating a likelihood of success on the merits in addition to irreparable harm.[21]

While it perhaps is arguable that Empire is subject to the heightened standard applicable where a litigant seeks to enjoin certain types of governmental action, the City does not so assert.[22] Rather, it assumes that the motion is governed by the usual two pronged standard applicable in this Circuit. The Court therefore proceeds on that basis.

#### Irreparable Injury

■■■ As the Court held in denying Empire's application for a temporary restraining order, it plainly has an adequate remedy at law with respect to the loss of sales on its existing arrangements. The contractors or subcontractors with whom it was dealing, given the City's action, will purchase concrete from other suppliers. The amount of sales thus diverted from Empire will be determinable to the last cubic yard. In consequence, the economic loss to Empire as a result of the City's action, should it ultimately be held unlawful, will be readily determinable. But the arrangements in respect of existing contracts are not the whole story.

The City's action probably will prevent contractors from considering Empire in sourcing their concrete requirements on future City contracts. As one could not determine the extent to which Empire would have obtained such supply contracts, absent the City's recent action, proof of a damage claim with respect to such lost business would be impossible. Moreover, in view of Empire's unrebutted claim that forty percent of its gross sales have been on City construction projects, the likeli-

16. *Id.*

17. *Id.* ¶ 22.

18. *Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir.1996) (citing *Sperry Int'l Trade, Inc. v. Government of Israel*, 670 F.2d 8, 11 (2d Cir. 1982)).

19. *E.g., Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir.1995).

20. *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) (quoting *Waldman Publishing Corp.*

*v. Landoll, Inc.*, 43 F.3d 775, 779–80 (2d Cir.1994)).

21. *Id.*

22. It is not clear that such an argument would succeed. The essence of Empire's claim is that the City acted in the absence of or, at least, in disregard of any applicable statutory scheme. In view of the City's position, however, it is unnecessary to decide this issue.

hood of such losses is sufficiently substantial to conclude that Empire is threatened with irreparable injury by the City's action.

### The Procedural Due Process Claim

The State may not deprive an individual of property or liberty without due process of law. Plaintiff claims that defendants' debarring Empire from supplying concrete on City projects violated its right to procedural due process by depriving it of a property or liberty interest without notice and a hearing.

In order to prevail in such an action, a plaintiff must "first identify a property right, second show that the State has deprived him of that right, and third show that the deprivation was effected without due process." [23] Even where a plaintiff establishes that it was deprived of a property right without a pre-deprivation hearing, the existence of an adequate and meaningful state post-deprivation remedy may be sufficient to satisfy the procedural component of the Due Process Clause.[24]

### Alleged Existence of a Protectible Interest

#### Property Interest

■ In this case, plaintiff claims a property interest in its supply contracts with contractors and subcontractors on City projects. In order to have a property interest that is subject to due process protection, a plaintiff "must have more than a unilateral expectation of it. [The plaintiff] must, instead, have a legitimate claim of entitlement." [25] Protectible property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." [26]

In *Eastway Construction Corp. v. City of New York*,[27] the Second Circuit held that "involvement in publicly-financed projects does not rise to the level of a property interest." [28] The circuit reiterated this view in *S & D Maintenance Co., Inc. v. Goldin*,[29] declining to "constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor." [30]

■ The disposition of Empire's claim follows *a fortiori* from *Eastway* and *S & D Maintenance*. Empire is not even in contractual privity with the City.[31] If a party to a City contract has no protectible property interest, surely Empire does not.

Empire's position is weakened further by the fact that the City contracts to which Empire's customers are parties are terminable at will by the City.[32] Where an

23. *Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir.1994) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir.1990) (per curiam)).

24. *Hudson v. Palmer*, 468 U.S. 517, 530–32, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 537–38, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987).

25. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Irwin v. City of New York*, 902 F.Supp. 442, 447 (S.D.N.Y.1995).

26. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701.

27. 762 F.2d 243 (2d Cir.1985), *on remand*, 637 F.Supp. 558 (E.D.N.Y.1986), *mod. on app.*, 821 F.2d 121 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

28. *Id.* at 249.

29. 844 F.2d 962 (2d Cir.1988).

30. *Id.* at 967; *see also Shifa Services, Inc. v. The Port Authority of New York and New Jersey*, No. 96 Civ. 1361(AGS), 1997 WL 16062, *4 (S.D.N.Y. Jan.15, 1997)).

31. Cpt. ¶ 35.

32. Article 45 of the contract for the City Hall project extends to the Parks Commissioner "the right ... to postpone, delay, suspend or terminate all or any portion of the services to be performed by the Contractor under the Agreement, or any additions thereto or modifications thereof, at any time and for any

administrative body maintains "significant discretion over the continued conferral of that benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit." [33] That is the case when a contract is terminable at will, a situation in which the Second Circuit expressly has held no property right exists.[34] Accordingly, plaintiff has not demonstrated the existence of a property interest protected by the Due Process Clause.[35]

### Liberty Interest

■ Empire's due process claim also can be read as asserting a deprivation of a constitutionally protected liberty interest. While not entirely clear, the claim seems to be twofold: that it has a liberty interest to "do business and make a living and to supply concrete . . . to the City of New York" [36] and in its reputation, which allegedly has been affected by the City's action. Neither claim appears to have substantial merit.

In *S & D Maintenance*, the plaintiff argued that it was deprived of a constitutionally protected liberty interest because it had been "forced out of business, 'tot[t]ering near bankruptcy, unable to get work,' as a direct result of the City's alleged breach of the contracts and withholding of payments." [37] The Second Circuit rejected this claim, holding that

"even discharge from governmental employment will not by itself constitute a deprivation of liberty . . . . Though S & D claims that the City's actions leave it without sufficient capital to pursue any line of work, the remedy lies in an action for damages under the contract. The fact that consequential damages of the alleged breach may be severe cannot convert a contract claim into a deprivation of liberty." [38]

Similarly, Empire cannot claim that the City's action in precluding Empire from supplying concrete to City projects deprives it of a liberty interest. The City is not responsible for providing Empire with a livelihood, even if a significant part of Empire's business has involved projects for the City.

■ Nor is Empire's second argument likely to prevail. Injury to reputation alone, even when inflicted by a state official, does not deprive an individual of a liberty interest.[39] *S & D Maintenance* summarized the applicable law:

"A government employee's liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to

reason deemed to be in the City's interest." Broder Decl. Att. 7. Similarly, with respect to the Foley Square and DDC projects the City "may, at any time, terminate the Contract by written notice to the Contractor." *Id.* at 3, and Holden Decl., Ex. B, Article 59A.

33. *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir.1991), *cert. denied*, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991).

34. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1062 (2d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 (2d Cir.1994); *see also S & D Maintenance*, 844 F.2d at 967.

35. That is not to say no property interest could arise out of City contract. "It is well

established that a contractor has a right to timely payment for work it performs under a contract with a state agency, and that such right is a property interest protected by the due process clause." *General Elec. v. New York State Dept. of Labor*, 936 F.2d 1448, 1453 (2d Cir.1991). This property interest, however, arises only where there exists "a contractual or state law entitlement to prompt payment." *S & D Maintenance*, 844 F.2d at 970.

36. Tr. 3/30/1999, 3, 13.

37. *S & D Maintenance*, 844 F.2d at 970.

38. *Id.*

39. *White Plains Towing*, 991 F.2d at 1062 (citing *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

take advantage of other employment opportunities.' " [40]

The termination of a state employee may violate the employee's liberty interest because "due process guarantees the employee an opportunity to defend [the employee's] 'good name, reputation, honor or integrity.' " [41] However, a finding of a violation of an employee's liberty interest is appropriate only if the terminating agency's officials made derogatory statements about the terminated employee without affording the employee a hearing at which to rebut those charges. [42] The statements made about the employee, moreover, must be so damaging to his or her professional reputation that they seriously would hinder the employee in finding work in that field, thereby violating the employee's liberty interest in pursuing the occupation of his choosing. [43] And of course, no stigma can attach or damage be incurred unless the statements are publicized. [44] "Without publication, the Supreme Court has stated, an individual's liberty claim is 'doomed.' " [45]

Although *S & D Maintenance* and similar cases involved employment termination, the right not to be so defamed extends equally to defamation occurring in the course of " 'termination of some other legal right o[r] status.' " [46] Even this status did not exist here because of the lack of privity of contract between Empire and the City. Nevertheless, the Court assumes,

without deciding, that Empire would be deemed to have a liberty interest if the City's action were sufficiently stigmatizing to implicate such an interest were it in privity. But even such an assumption does not raise it over the hurdle.

Even viewed in the light most favorable to Empire, the City's actions were not sufficiently stigmatizing. Plaintiff has not shown that the banning of Empire from City contracts, in and of itself, forecloses it from engaging in the concrete business. The circuit, however, has said that a statement in connection with termination implicates a liberty interest only if it seriously hinders the subject's ability to find work in its field. The City's actions simply do not reach that threshold. In consequence, it is unlikely that the City's action so stigmatized Empire as to deprive it of a liberty interest.

*Due Process*

■ Even assuming *arguendo* the existence of a property or liberty interest, plaintiff would be unlikely to prevail on its procedural due process claim because it quite likely received all the process that was due.

Here, plaintiff could have obtained—and probably still can obtain—judicial review of defendants' actions in the state courts. Article 78 of the CPLR affords a summary proceeding by which one aggrieved by ad-

**40.** *S & D Maintenance,* 844 F.2d at 970 (quoting *Brandt v. Board of Cooperative Educational Services,* 820 F.2d 41, 43 (2d Cir.1987)).

**41.** *Donato v. Plainview–Old Bethpage Central School District,* 96 F.3d 623, 630 (2d Cir. 1996) (quoting *Roth,* 408 U.S. at 573, 92 S.Ct. 2701)).

**42.** *Wisconsin v. Constantineau,* 400 U.S. 433, 436, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 446 (2d Cir.1980).

**43.** *See Huntley v. Community School Board,* 543 F.2d 979 (2d Cir.1976), *cert. denied.* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977); *Thomas v. Held,* 941 F.Supp. 444, 448 (S.D.N.Y.1996).

**44.** *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (upholding dismissal of a liberty interest when there is no public disclosure); *Bishop v. Wood,* 426 U.S. 341. 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (stigmatizing statements must be publicly disclosed).

**45.** *Schwartz v. Mayor's Comm. on Judiciary of New York,* 816 F.2d 54, 57 (2d Cir.1987) (quoting *Loudermill,* 470 U.S. at 547 n. 13, 105 S.Ct. 1487).

**46.** *White Plains Towing Corp.,* 991 F.2d at 1063 (quoting *Easton v. Sundram,* 947 F.2d at 1016).

ministrative action may obtain the relief previously available by the common law writs of certiorari, mandamus and prohibition and raise questions as to the legality of the administrative action.[47] Among the issues that may be raised is "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion..."[48] A stay of the administrative action sought to be reviewed is available, albeit as a matter of discretion rather than of right.[49]

As noted previously, the *Parratt–Hudson* line of cases holds that the existence of an adequate state remedy precludes a procedural due process claim where the state post-deprivation procedure is all the process that is due. Moreover, the Second Circuit held in 1988 that the existence of New York's Article 78 proceeding precluded resort to Section 1983 in a procedural due process case even where the plaintiff had failed to bring a timely state proceeding.[50]

"In 1990, however, the Supreme Court held in *Zinermon v. Burch*[51] that 'the existence of state remedies will not preclude procedural due process claims where (1) the risk of the deprivation complained of was foreseeable to the State, (2) the State might have reduced that risk either through additional predeprivation safeguards or by limiting the defendants' discretion in implementing established procedures, and (3) the defendants are authorized by the State to implement the requisite safeguards.' "[52]

There is little question that the risk of an arbitrary deprivation in these circumstances might be reduced through additional pre-deprivation safeguards such as a hearing. The defendants certainly are authorized to implement added safeguards. The harder question is whether the risk of the allegedly arbitrary deprivation was foreseeable as opposed to a random and unauthorized act.

The Second Circuit addressed this precise question in *Hellenic American Neighborhood Action Committee ("HANAC")*.[53] The plaintiff there claimed that the City's cancellation of its contracts constituted a *de facto* debarment without due process. The Circuit noted that HANAC "makes no claim that the due process violation was caused by an established state procedure, such as the City Charter or the [Procurement Policy Board] Rules. To the contrary, HANAC argues that state officials acted in flagrant violation of the City Charter and the PPB Rules."[54] It went on to hold that the deprivation there at issue was a random and arbitrary act and that HANAC's claims could survive "only if New York does not provide adequate postdeprivation procedures."[55]

Empire's claim here is substantially identical. It alleges that its removal was "in violation of the Procurement Policy Board rules of the City of New York and the New York City Charter and constitute[d] a *de facto* debarment."[56] In consequence, *Zinermon* is inapplicable here, and the availability of Article 78 review is fatal to the procedural due process claim.

---

**47.** N.Y. CPLR § 7803 (McKinney 1994).

**48.** *Id.* § 7803, subd. 3.

**49.** *Id.* § 7805.

**50.** *Campo v. New York City Employees' Retirement System*, 843 F.2d 96 (2d Cir.), *cert. denied.* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988).

**51.** 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

**52.** *C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F.Supp. 1065, 1071 (S.D.N.Y.1995).

**53.** 101 F.3d 877 (2d Cir.1996).

**54.** *Id.* at 881.

**55.** *Id.*

**56.** Cpt. ¶ 20.

## The Substantive Due Process Claim

 At oral argument, plaintiff claimed also that defendants' action violated its substantive due process rights. Substantive due process protects those rights that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental."[57] Put another way, it "protects only those interests that are 'implicit in the concept of ordered liberty.'"[58] Substantive due process extends also to "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised."[59] Traditionally, the types of interests recognized under substantive due process include rights of privacy, family and procreation—those rights that are so central to an individual's freedom that "neither liberty nor justice would exist if [they] were sacrificed."[60]

Applying the foregoing principles in the context of a state labor contract, the Second Circuit wrote in *Local 342* that "simple state-law contractual rights, without more, are [not] worthy of substantive due process protection."[61] That case involved a dispute over a collective bargaining agreement governed by a New York law which proscribed unilateral alteration of the terms of the agreement. The union alleged that the Town Board's unilateral termination of an insurance trust as the health benefits provider for its employees deprived union members of a legitimate claim of entitlement to payments by the Town to the trust and therefore violated their substantive due process rights. The Second Circuit held that this contract right should not be afforded substantive due process protection because the nature of the right at issue was not sufficiently important. Other courts also have held that substantive due process does not protect "run-of-the-mill contractually-based property interest[s]."[62]

On the other hand, there undoubtedly are circumstances in which a breach of contract by a state actor would raise substantive due process concerns. While "simple state-law contractual rights, without more," do not do so, the question in each case is whether the breach affects interests sufficiently grave to trigger due process scrutiny. The Court must look to the effect of the breach on the claimant and determine whether the effect is so dramatic and the rights implicated so fundamental that the Constitution provides a remedy. For example, the unilateral revocation of leases in public housing, although certainly a breach of contract, could

**57.** *Local 342*, 31 F.3d at 1196 (quoting *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993)) (citations omitted).

**58.** *Id.*

**59.** *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (citations omitted).

**60.** *Bowers v. Hardwick*, 478 U.S. 186, 191–92, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (citation omitted); *see also Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (collecting cases discussing interests traditionally accorded substantive due process protection).

**61.** *Local 342*, 31 F.3d at 1196; *accord, S & D Maintenance*, 844 F.2d at 966–69 & n. 4.

**62.** *Compare Charles v. Baesler*, 910 F.2d 1349, 1351 (6th Cir.1990) (contractual right to pro-motion with Fire Department does not rise to constitutional level); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 35 (6th Cir.1992) (per curiam) (rights under contract to provide insurance to municipal employees are not fundamental and therefore not accorded substantive due process protection); *Reich v. Beharry*, 883 F.2d 239, 244–45 (3d Cir.1989) (same for county's contract to pay fees of special prosecutor); *with Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 222–24, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (assuming, without deciding, that substantive due process protection protects some state-created contract rights); *Moore v. Warwick Pub. Sch. Dist. No. 29*, 794 F.2d 322, 329–30 (8th Cir.1986) (arbitrary and capricious dismissal of school superintendent warrants substantive due process protection); *Gargiul v. Tompkins*. 704 F.2d 661, 668–69 (2d Cir. 1983) (same for dismissal of tenured schoolteacher), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984).

threaten to deprive needy residents of roofs over their heads in circumstances in which their financial situations would not permit them to find shelter in the private market and, in consequence, become an appropriate focus of substantive due process concern.[63]

 The interests affected by the City's *de facto* debarment of Empire from City projects are not trivial. A significant portion of plaintiff's revenue is derived from such projects, and it is possible that this action will affect Empire's remaining business. Nevertheless, the Supreme Court has cautioned against expansion of the substantive component of the Due Process Clause.[64] To the extent that substantive due process protection exists, it must be confined to the protection of interests central to individual freedom and autonomy. Without minimizing the significance of the plaintiffs' interests, the Court concludes that those interests simply are not sufficiently weighty to warrant their protection under the substantive due process rubric.

*Equal Protection of the Laws*

 Plaintiff claims also that defendants' actions denied it equal protection of the laws. In order to state a claim under the Equal Protection Clause with respect to a facially neutral policy, as is the City's policy here, a plaintiff must allege, among other things, that he or she was treated differently from others similarly situated.[65] There is no such allegation in this complaint. Accordingly, the equal protection claim is unlikely to succeed.

*Conclusion*

For the foregoing reasons, the Court finds that plaintiff is not likely to succeed on the merits. In consequence, its motion for a preliminary injunction is denied. The foregoing constitutes the Court's findings of fact and conclusions of law.

As the case is before the undersigned as the Part I judge in the absence of the judge to whom it is assigned, and there is no emergent need for a decision on the motion to dismiss, the undersigned declines to rule on that motion.

SO ORDERED.

---

**63.** *See S & D Maintenance,* 844 F.2d at 966 n. 4; *cf. Escalera v. New York City Housing Auth.,* 425 F.2d 853, 861 (2d Cir.) (protectable property interest in leases for public housing), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *United States v. Leasehold Interest in 121 Nostrand Ave.,* 760 F.Supp. 1015, 1027 (E.D.N.Y.1991) (same).

**64.** *See, e.g., Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

**65.** *E.g., La Trieste Restaurant & Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994); *see also Smylis v. City of New York,* 983 F.Supp. 478, 481 (S.D.N.Y.1997).